599 So.2d 148 (1992)
HESSTON CORPORATION, Appellant,
v.
James M. ROCHE, Appellee.
No. 90-2038.
District Court of Appeal of Florida, Fifth District.
April 24, 1992.
Rehearing and Rehearing Denied June 8, 1992.
Susan K. McKenna of Garwood & McKenna, P.A., Orlando, for appellant.
Christopher T. Vernon of Pleus, Adams & Spears, P.A., Orlando, for appellee.
Rehearing and Rehearing En Banc Denied June 8, 1992.
GRIFFIN, Judge.
Appellant, Hesston Corporation ("Hesston"), seeks review of a final judgment entered following a jury verdict finding that Hesston had breached a contract of employment with appellee, James M. Roche ("Roche"). The appeal presents two difficult issues, one procedural and one substantive, and our resolution of both of these issues in favor of appellant compels reversal.
The basic facts upon which the case was tried are as follows. Roche had worked for several years as a sales representative for a farm equipment company. In 1985, he left that employment hoping to find a position in Florida and, to that end, sent out a number of resumes. Fleetwood Homes ("Fleetwood") contacted him and ultimately *149 made him a job offer which he accepted. The day after Roche's interview with Fleetwood, Roche was contacted by Jim Wilson, a Hesston manager, about the possibility of employment with the Woods Division of Hesston ("Woods") and Roche agreed to meet with him. Roche testified he advised Wilson that he wished to have a position where he could remain in Florida, to which Wilson agreed. Roche also told Wilson that he had been offered a position with Fleetwood at a $45,000 per year salary. According to Roche, Wilson came back and said to him, "If you take this job with Woods, you'll have lifetime employment." Roche testified that the Fleetwood position appeared to be the higher paying job, but he elected the position with Hesston because of the promise of lifetime employment. He understood the lifetime employment promise to mean that he could have the proffered job with Hesston so long as "he sold," no matter whether he violated company policy or committed criminal acts and even if the company experienced significant economic reversal; it was an ironclad promise without exception. Even though Roche retained the salary calculations given him by Wilson, there were no notes or other record of the lifetime employment promise.
When Roche began his employment with Hesston, he was sent to Tennessee for training. While there, he was asked to sign numerous documents, including one entitled "Terms of Employment." This document contained the following provision:
I agree to accept that Woods has the right and authority to terminate my employment anytime as the overall well-being of the Company is of prime importance and may dictate my employment on a daily basis.
This document was signed by Roche; however, he testified at trial that based on the cramped appearance of his signature at the bottom of the "Terms of Employment," he was able to determine that he had never seen the text of the document upon signing it but, instead, had thought he was merely signing a document confirming his acceptance of responsibility for company equipment.
Roche was also sent correspondence from Bo Vanman, the personnel manager for Woods. The letter confirms the offer of employment to Roche, including salary terms, car allowance, insurance coverage and vacation. The letter concludes:
Your primary objective will be increased sales volume and profit in your territory consistent with company policy. Your dollar goals as well as the district boundary will be discussed with you further during the orientation session, however, they will be along the lines discussed with you during the interview with Jim Wilson.
There is no mention in either of these documents of any promise of permanent or lifetime employment, and Roche acknowledges he never mentioned the lifetime employment promise to any employee of appellee.
Roche was fired from his employment on August 19, 1988 based on alleged complaints from Hesston's dealers concerning Roche's manner of handling their accounts. After termination, Roche directed a series of letters to Hesston but made no reference to the alleged promise of lifetime employment. On May 18, 1989, Roche filed suit in one count against Hesston alleging "wrongful discharge." His cause of action was based on the written "terms of employment", specifically the provision that Hesston had the right to terminate his employment any time "as the overall well-being of the company is of prime importance." He alleged that his termination was manifestly unfair in that the reasons given for termination were false and would, therefore, not serve the company's best interest. There was no mention in the complaint of any contract for lifetime employment.
In response to this complaint, Hesston filed a motion to dismiss based on the employment at will doctrine, asserting that, under Florida law, such an agreement containing no specific term of employment rendered Roche an "at will" employee. The motion to dismiss was granted. Roche *150 amended his complaint two more times. The amended complaint is not a part of the record on appeal but it appears from subsequently filed pleadings that the amended complaint did contain the allegation that Wilson promised the plaintiff "that if he took the job as sales representative for Woods, he could stay in Florida for the rest of his life as such representative if he built up Woods business in Florida." After Hesston filed a motion for summary judgment based on the amended complaint, Roche immediately filed a motion to amend the amended complaint, asking leave "to separate the complaint into two separate causes of action for breach of contract and for fraud" on the ground that "[i]n the interest of justice it is necessary that [he] be allowed to plead these two separate causes of action so that ... [he could] be fully compensated for the acts complained of in the Amended Complaint." The court allowed the amendment.
In the second amended complaint, Count I was denominated "breach of contract". Roche alleged the terms of his employment were set forth in the Vanman letter and in the "terms of employment", which were attached to the pleading. Count II, entitled "Fraud", alleged that Wilson had made a false promise of lifetime employment to Roche which he did not intend to honor and on which Roche relied to his detriment in accepting the position with Hesston. In response to the amended complaint, Hesston had asserted the statute of frauds as an affirmative defense. Upon the filing of the second amended complaint, alleging only breach of the written agreement and fraud, the defense of the statute of frauds was not realleged.
At trial, Hesston took the position the writings that formed the basis for the employment agreement between Roche and Hesston contained no definite term or duration of employment; therefore, the employment was at-will. In response, Roche's counsel argued that the writings did incorporate by reference the lifetime employment promise. He also argued in opposition to the motion for directed verdict:
And if your Honor takes that position that the promise of lifetime employment was not written, then I would seek to amend our complaint to conform to the evidence.
The court made no response to this statement and no further attempt was made to get an order granting leave to amend. The court nevertheless denied the motion for a directed verdict. When the jury instructions were prepared, the court, over objection, deleted the word "written" from appellant's proposed instruction on breach of contract. During deliberations, the jury came back with the question whether a contract can be binding if purely verbal, to which the court responded that a contract may be either written or verbal and be binding. The jury then rendered its verdict in favor of Roche on breach of contract only, awarding $135,000 in damages.
Hesston contends that it was error to submit Count I to the jury without limiting the claim to breach of the written agreements because no oral promise of lifetime employment was ever pleaded. Additionally, Hesston asserts that, in any event, the alleged oral promise of lifetime employment is unenforceable in Florida.
Since the issue of enforceability of the alleged oral agreement for lifetime employment is dispositive, we will begin there. Contracts for "lifetime" or "permanent" employment are not favored in the law, and courts rarely enforce them because of their indefiniteness and uncertainty. See, e.g., Aberman v. Malden Mills Indus., Inc., 414 N.W.2d 769, 771 (Minn.App. 1987); Muller v. Stromberg Carlson Corp., 427 So.2d 266, 268 (Fla. 2d DCA 1983). See generally Robert A. Brazener, Annotation, Validity and Duration of Contract Purporting To Be For Permanent Employment, 60 A.L.R.3d 226, 233-34 (1974). From a review of the recently decided cases from other jurisdictions, courts today are no less uncomfortable with "lifetime" employment claims than they were fifty years ago. Fregara v. Jet Aviation Business Jets, 764 F. Supp. 940 (D.New Jersey 1991); Rowe v. Montgomery Ward & Co., Inc., 437 Mich. 627, 473 N.W.2d 268 (1991); Yost v. Early, 87 Md. App. 364, 589 A.2d 1291, cert. denied, *151 324 Md. 123, 596 A.2d 628 (1991); Boggs v. Avon Products, Inc., 56 Ohio App.3d 67, 564 N.E.2d 1128 (1990). There are a number of good reasons for this apprehension. First of all, such promises of "lifetime" employment are usually "oral, uncorroborated, vague in import and details and highly improbable."[1]Aberman, 414 N.W.2d at 771. Also, courts question the inherent fairness of an agreement that places the entire burden of the long-term commitment on the employer since no comparable commitment exists on the part of the employee:
Accordingly, for reasons of lack of mutuality and indefiniteness, it is usually held that contracts for permanent or lifetime employment, when unsupported by consideration additional to services, are indefinite in nature and terminable at will of either party. When the element of additional consideration submitted by the employee is added, the relationship between the parties takes on a different light... . In order for additional consideration to be sufficient to support a promise of permanent or lifetime employment, it would appear that there must be a detriment absorbed by the employee which results in a corresponding benefit to the employer.
Annotation, supra at 233-34.
Florida adheres strongly to the principle that an employment contract requires definiteness and certainty in its terms and that an employment contract without a definite term of employment is terminable at the will of either party without cause. Muller, 427 So.2d at 268-270. Florida courts will enforce a contract for lifetime employment, however, where its terms are sufficiently definite to confirm the intent of the parties to form a lifetime employment agreement and to make enforcement feasible, and where, in addition to the employee's services, there is some other substantial consideration given by the employee that is an integral part of the contract. Chatelier v. Robertson, 118 So.2d 241, 244 (Fla. 2d DCA 1960).
Chatelier involved a written agreement pursuant to which the plaintiff had sold his manufacturing business and transferred formulas and other trade secrets in exchange for royalties and employment for "life," as long as he was not disabled from carrying out his duties. In Chatelier, the plaintiff was expressly deemed to be so indispensable to the employer that his performance was enforceable by the employer by specific performance.
The only argument put forth by Roche that there was additional consideration sufficient to make the "lifetime employment" promise enforceable under Florida law is Roche's relinquishment of the job with Fleetwood Homes. In Hamlen v. Fairchild Indus., Inc., 413 So.2d 800 (Fla. 1st DCA 1982), the court refused to enforce an oral promise of "permanent employment" even though the employee alleged he had been induced to leave his specialized technician's position with Westinghouse and to forego pension and related benefits based on Fairchild's promise. However, we have found no case in Florida that has expressly dealt with the question whether relinquishment of other employment constitutes the sufficient additional consideration referred to in Chatelier.
Cases that have arisen in other jurisdictions show no great consistency, but the majority rule appears to be that, by merely placing himself in a position where he can accept proffered employment, an employee does not supply the necessary sufficient additional consideration required to enforce a lifetime employment promise. Annotation, supra at 264-290. Relinquishing another position is viewed as an incident of an agreement to perform services for the employer whose offer of employment is accepted. Whether the employment is at-will, or lifetime, the employee must relinquish other employment to take the job; thus giving up the other job does not infer that the employment agreement was for *152 "lifetime employment" rather than merely "employment." Ladesic v. Servomation Corp., 140 Ill. App.3d 489, 95 Ill.Dec. 12, 14, 488 N.E.2d 1355, 1357 (1986).
Examples of consideration that have been found sufficient to support a lifetime employment promise are: release of an employer from a claim for injuries, conveyance of property to the employer or relinquishment of a comparable lifetime-guaranteed job. Annotation, supra at 264-290; Moody v. Bogue, 310 N.W.2d 655 (Iowa App. 1981). But see Scott v. Lane, 409 So.2d 791 (Ala. 1982). We conclude that the better rule is to require that independent consideration to support the "lifetime" employment promise must be present and that relinquishment of another position, even a better paying position, is insufficient.
Finally, we note that upon the filing of the second amended complaint, which clearly alleged breach of a written contract of employment, Hesston dropped its statute of frauds defense. The statute of frauds provides that "[n]o action be brought ... upon any agreement that is not to be performed within the space of one year from the making thereof... ." § 725.01 Fla. Stat. (1991). The purpose of the statute of frauds is to intercept the frequency and success of actions based on nothing more than loose verbal statements and mere innuendo, Yates v. Ball, 132 Fla. 132, 181 So. 341, 344 (1937), and should be strictly construed to accomplish its purpose. Rowland v. Ewell, 174 So.2d 78, 80 (Fla. 2d DCA 1965). The most appropriate and effective way to deal with the myriad problems posed by contracts for lifetime employment would simply be to require that they be in writing.
Because the statute of frauds requires that an agreement "that is not to be performed within the space of one year" from its making must be in writing, it would seem logical that an agreement contemplated to last for the lifetime of the promisee should also be in writing.[2] Florida courts, however, seem to be aligned with the majority rule that since death is uncertain and the contract could therefore terminate prior to the expiration of one year, the statute of frauds does not apply to a contract of lifetime employment. Schenkel v. Atlantic National Bank of Jacksonville, 141 So.2d 327, 330 (Fla. 1st DCA), cert. denied, 148 So.2d 280 (Fla. 1962). Only if a contract could not possibly be performed within one year would it fall within the statute. Byam v. Klopcich, 454 So.2d 720, 721 (Fla. 4th DCA 1984). The result is that a promise to employ someone for five years,[3] two years, or even thirteen months, has to be in writing in order to be enforceable, but a promise to employ someone for their entire life does not.[4]
In Hope v. National Airlines, Inc., 99 So.2d 244, 246 (Fla. 3d DCA 1957), the court refused to dismiss a complaint for breach of an agreement for permanent employment based on the statute of frauds; however, the court noted that, in Florida, if the evidence indicates the intent of the parties was for employment to exceed one year, the contract would fall within the statute of frauds. The court refused to speculate about the parties' intent at the motion to dismiss stage.
In Niagara of Fla., Inc. v. Niagara Therapy Mfg. Corp., 231 So.2d 277 (Fla. 2d DCA), cert. denied, 237 So.2d 763 (Fla. 1970), the court observed the general rule that a contract for a person's "lifetime" is not within the statute of frauds because "the contract could have been terminated prior to the expiration of one year"; nevertheless, the court found the verbal lifetime contract in that case to be barred by the statute of frauds. In essence, the agreement in that case was that the appellant would pay $25,000 for the purchase of the stock of the Niagara Sales Corporation "at *153 which time or the end of time we had finished paying, according to that agreement, we would have a lifetime contract... ." Id. at 277. The appellant also testified, however, that it was expected that it would take approximately three years for the $25,000 payment to be made. Because the parties' agreement contemplated the agreement would exceed one year, the court concluded it had to be in writing. Id. See also First Realty Inv. Corp. v. Gallaher, 345 So.2d 1088 (Fla. 3d DCA 1977), cert. denied, 359 So.2d 1214 (Fla. 1978).
Similarly, in All Brand Importers, Inc. v. Tampa Crown Distributors, Inc., 864 F.2d 748, 750 (11th Cir.1989), a recent case applying Florida law, the Eleventh Circuit Court of Appeals applied the statute of frauds to an oral distributorship agreement of indefinite duration ("as long as Tampa Crown did a good job, its sales continued to grow ...") that could have been terminated earlier than one year because the evidence showed the parties intended the contractual relationship would last more than one year. See Yates, 181 So. at 344 (where a contract is susceptible of performance within a year and the evidence shows that it was expected to have been performed within that time, it is not within the statute of frauds).
In his brief, Roche has attempted valiantly to establish that the lifetime employment promise was incorporated by reference into the written documents pleaded in the breach of contract count, but we simply cannot credit this argument. There is no way to contort the text of these documents to reach that result. Nor can we agree that it was harmless error to submit the case to the jury on the basis of the oral lifetime employment promise when the pleadings contained only a claim for breach of a written agreement. The only arguably enforceable employment promise by Hesston that Roche proved at trial was the lifetime employment promise, and that promise was never pleaded as a basis for breach of contract. Possible defenses to an oral contract claim, such as the statute of frauds, were not presented. It is apparent from reviewing the record in this case that the defense was specifically tailored to defense of two theories: breach of a written agreement and fraud. Although we detect a certain disingenuousness in Hesston's slavish adherence to the narrow terms of the second amended complaint, Hesston had the right to assume that the causes of action pleaded would be the causes of action tried, and to defend accordingly. See Freshwater v. Vetter, 511 So.2d 1114 (Fla. 2d DCA 1987).
REVERSED.
PETERSON, J., concurs.
GOSHORN, C.J., dissents without opinion.
NOTES
[1] Commonly unspecified are whether lifetime employment depends on a given level of performance; whether there is an exception for misconduct; whether rules applicable to other employees apply; whether employment must be maintained even if the company undergoes severe financial distress or the need for the particular position is eliminated.
[2] Unless, of course, the parties expect that the promisee will be dead in less than a year.
[3] Tanenbaum v. Biscayne Osteopathic Hospital, Inc., 190 So.2d 777 (Fla. 1966); Flowers v. Finley, 311 So.2d 804 (Fla. 3d DCA 1975); Ostman v. Lawn, 305 So.2d 871 (Fla. 3d DCA 1974).
[4] Even an oral contract for employment for an indefinite period of time is within the statute of frauds. Johnson v. Edwards, 569 So.2d 928 (Fla. 1st DCA 1990).