[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15021
Non-Argument Calendar
_____

D.C. Docket No. 3:08-cv-00411-MMH-JRK


MELISSA C. BUTTERWORTH,

Plaintiff-Appellant,

versus

LABORATORY CORPORATION OF
AMERICA HOLDINGS,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 14, 2014)

Before MARCUS, WILLIAM PRYOR, and BLACK, Circuit Judges.

PER CURIAM:

Melissa C. Butterworth appeals the district court's grant of summary judgment to Laboratory Corporation of America Holdings (LabCorp) on her claims of retaliatory termination under the Civil Rights Act (Title VII), 42 U.S.C. § 2000e-3, and the Florida Civil Rights Act (FCRA), Fla. Stat. § 760.10, retaliatory termination under the Florida Whistleblower Act (FWA), Fla. Stat. § 448.102; and breach of contract for terminating her without cause, withholding stock options, and failing to pay earned commissions.[1]

Butterworth contends the district court erred when it granted summary judgment to LabCorp on the Title VII, FCRA, FWA, and breach of contract claims, contending the district court erroneously found facts and made improper inferences at summary judgment, and it erred by finding that she did not have enforceable contracts with LabCorp for stock options or incentive compensation. We address each argument in turn. After review,[2] we affirm the district court's grant of summary judgment.

---

[1] Butterworth also raised gender discrimination, *quantum meruit*, and unjust enrichment claims, as well as a breach of contract claim regarding her pension plan, but she fails to present any argument in her briefs regarding the district court's dismissal of these claims. Accordingly, she has abandoned those issues on appeal. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

[2] We review *de novo* the grant of summary judgment. *Crawford v. Carroll*, 529 F.3d 961, 964 (11th Cir. 2008). All reasonable factual inferences are drawn in favor of the non-moving party. *Kragor v. Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1307 (11th Cir. 2012). Summary judgment is proper if evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Crawford*, 529 F.3d at 964.

# I. BACKGROUND

Butterworth began working for LabCorp in 2002, when it acquired her former employer, Dynacare. She negotiated the terms of her employment with her first LabCorp supervisor, Bob Polege. The terms of her employment, including salary and commissions, were memorialized in a signed letter in November 2002. For several years, Butterworth oversaw LabCorp's Florida sales force and had a direct hand in acquiring new customers. Butterworth's role changed in 2006 to a purely managerial position. In January 2007, she complained to her supervisor, Terry Farrell, that he discriminated against her on the basis of her gender. She also reported several operational deficiencies within LabCorp to Farrell in June 2007. Around the same time, Farrell discovered that Butterworth, a male manager, Jack Sznapstajler, and two of Butterworth's subordinates, Kelly Balester and Jed Walker, were involved in a real estate website entitled Realtor to the Stars (RTS). Finding that RTS presented a conflict of interest with their responsibilities and duties at LabCorp, Farrell terminated both Butterworth and the other supervisor, Sznapstajler, later in June 2007. Butterworth responded by filing the present suit.

# II. DISCUSSION

## A. *Title VII and the FCRA*

Butterworth contends a jury could conclude from the evidence that LabCorp retaliated against her because she communicated concerns about gender

3

discrimination to her superiors on several occasions.  The close proximity of her complaints in June 2007 to her termination created a material question of fact regarding the causal connection between her complaints and her termination.

Title VII prohibits employers from retaliating against an individual because she has opposed a practice prohibited by Title VII, or participated in filing a charge of discrimination.  *See* 42 U.S.C. § 2000e-3(a).  If a plaintiff makes out a *prima facie* case of retaliation and the employer articulates a legitimate, non-retaliatory reason for the challenged employment action, the employee may show by a preponderance of the evidence that the legitimate reasons offered by the employer for taking the adverse action were pretexts for unlawful retaliation.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

Although Butterworth demonstrated she engaged in protected activity by complaining of discrimination, and her termination constituted a materially adverse action, she failed to demonstrate a causal connection between them.  *See Chapter 7 Trustee v. Gate Gourmet*, 683 F.3d 1249, 1258 (11th Cir. 2012) ("A plaintiff establishes a prima facie case of retaliation by showing that:  (1) she 'engaged in statutorily protected activity'; (2) she 'suffered a materially adverse action'; and (3) 'there was a causal connection between the protected activity and the adverse

4

action.'"). Outside of the January "skit" dispute,[3] Butterworth identified only two instances in which she complained of sex discrimination:  her complaints on June 15 and June 22, 2007.  She did not demonstrate that these were causally related to her termination.  Although the exact date that LabCorp management became aware of the RTS website is unclear, undisputed email evidence demonstrated that Farrell, Bob Nelson, and John Gornto were discussing the conflict of interest issue related to the website as early as June 12, three days before Butterworth complained that her operational concerns were being ignored because of her gender.  Similarly, Butterworth's June 22 complaint and her comment during the meeting at which she was terminated were subsequent to LabCorp's investigation into RTS.  While the actual decision to fire many not have been made until she refused to discuss the incident, a recommendation to fire her had been made previously, which undercut her efforts to show causation in that respect.  *See Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) (stating when an employer contemplates an adverse action before an employee engages in protected activity, temporal proximity between the protected activity and a later adverse action does not "suffice to show causation").

---

[3]  While Butterworth mentions the January 2007 skit in her brief on appeal, she does not expressly challenge the court's conclusion that this was too remote from her firing to establish causation.  Accordingly, any claim in that respect is abandoned.  *See Access Now v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) (holding a claim that has not been adequately briefed is deemed abandoned).

However, even assuming Butterworth established a prima facie case of retaliation, her involvement in the RTS website and related corporate policy concerns constituted a legitimate nondiscriminatory reason for officials to conduct an investigation, and evidence showed that when the investigation could not proceed due to her failure to cooperate, her termination resulted.  Butterworth did not demonstrate the reasons given by LabCorp for firing her were false.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (explaining reasons are not pretextual unless it is shown both that the reasons were false, and that retaliation was the real reason).  Specifically, Butterworth failed to rebut each proffered reason head on, as the evidence did not undermine LabCorp's contentions that she was involved in the RTS website with subordinates, that the website advertised a "full-time commitment" from the listed sellers, including Butterworth, that LabCorp had a conflict of interest policy in place that prohibited both actual and potential conflicts and that prohibited any activity that might impact an employee's objectivity at LabCorp, not just competing with LabCorp, and that she refused to discuss the website with Terry Farrell and Kate Sumison.  *See Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2001) (stating the plaintiff must meet each proffered reason "head on," and she cannot succeed by simply disputing the wisdom of the employer's proffered reasons).  Instead, Butterworth argues her undisputed conduct did not actually violate the policy, disagreeing with the

6

wisdom of LabCorp's conclusions rather than showing that its bases for her termination were false. This is insufficient to demonstrate falsity. *See id.*

Butterworth further failed to show her June complaints were the but-for cause of her termination. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013) (holding "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action"). Evidence showed that Sznapstajler, a male comparator, was also fired on the same day for the same conduct, although he was also caught using his phone for RTS business while working for LabCorp. Moreover, to the extent Butterworth seeks to rely on her own affidavit to support her claim that retaliation was the but-for cause of her termination, her conclusory, self-serving statements are insufficient as a matter of law to establish but-for causation. *See Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (stating conclusory allegations of retaliation, without more, are not sufficient to carry a plaintiff's burden).

Finally, the disputed evidence of Farrell's potentially discriminatory comments, his prior knowledge of the RTS site, and Polege's encouragement to sell personal properties on the side is a mere scintilla of proof potentially supporting Butterworth's case. This is not enough to demonstrate that retaliation was the but-for cause of her termination. *See Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006) ("A mere scintilla of

7

evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." (quotations omitted)).  Without establishing but-for causation, Butterworth failed to adequately support her claim, and summary judgment was appropriate.  *See Univ. of Tex. Sw. Med. Ctr.*, 133 S. Ct. at 2528.  Thus, we affirm the district court's grant of summary judgment to LabCorp on Butterworth's claims of retaliatory termination under Title VII and the FCRA.

*B.  FWA*

Butterworth contends that evidence established genuine issues of material fact regarding the actions LabCorp took against her for raising concerns that LabCorp was engaged in illegal business practices.  She complained about operational deficiencies that violated either federal or state law, or contravened Bahamian law.[4]  She asserts she was terminated within a few business days of her complaint about deceiving Bahamian immigration authorities, and thus a jury could conclude that the reason given for her termination was a pretext for retaliation under the FWA.

The FWA provides that a form of expression is statutorily protected if an employee "[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation."  Fla.

---

[4]  The applicability of the FWA to violations of Bahamian law alleged by Butterworth is unclear, but our resolution of this claim does not require us to decide the issue.

Stat. § 448.102.  We apply Title VII retaliation analysis to a claim of retaliatory discharge under the FWA.  *Sierminski v. Transouth Financial Corp.*, 216 F.3d 945, 950-51 (11th Cir. 2000).

Even if we assume that Butterworth established a *prima facie* case of retaliation under the FWA, she failed, for the same reasons discussed above, to demonstrate that LabCorp's stated reasons for terminating her were pretexts for whistleblower retaliation.  *See id.*  First, Gornto indicated in an email on June 12, three days prior to Butterworth's submission of her operational complaints to Farrell, that he was concerned about potential conflicts of interest posed by the RTS website.  LabCorp management was already considering terminating her when she submitted her operational complaint on June 15, precluding Butterworth's argument that temporal proximity alone established a causal connection between her complaint and her termination.

Second, Butterworth failed to demonstrate that LabCorp's stated reasons for her termination, namely her involvement with the RTS website and the associated conflicts of interest, and her refusal to discuss the same, were false, and thus failed to show pretext.  *See id.*  Accordingly, Butterworth failed to demonstrate pretext, and her claim under the FWA fails.  *See Reeves*, 530 U.S. at 143.  We affirm the district court's grant of summary judgment to LabCorp on Butterworth's FWA claim.

9

*C. Breach of Contract*

*1. Termination for Cause*

Butterworth contends there was sufficient evidence for a jury to conclude that LabCorp's stated reason for her termination was a pretext for an unlawful motive, her termination constituted a breach of contract, and she was therefore entitled to advance notice or pay in lieu of notice.

For a breach of contract claim, Florida law requires the plaintiff to plead and establish, among other things: (1) the existence of a contract; and (2) a material breach of that contract. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). A material breach of contract allows the non-breaching party to treat the breach as a discharge of its contractual liability. *Hospital Mort. Grp. v. First Prudential Dev. Corp.*, 411 So. 2d 181, 182 (Fla. 1982).

Summary judgment was appropriate on Butterworth's notice/severance pay breach of contract claim, because evidence did not refute LabCorp's contention that Butterworth violated company policy by setting up the RTS website. The existence of Butterworth's employment contract is undisputed, and its terms included a provision requiring LabCorp to either provide her with six months' notice of pay in lieu of notice if it terminated her without cause, but neither notice nor severance pay was required if LabCorp terminated her for cause. LabCorp's code of conduct, which contained its conflicts of interest policy, clearly stated that

10

violations could result in termination, and the conflicts policy prohibited actual and potential conflicts, including but not limited to outside employment and any interests that impact the objectivity and efficiency with which an employee can perform her work for LabCorp.

With undisputed evidence of deliberation and the termination of an identically situated comparator for both potential and actual conflicts of interest, including discussions among LabCorp management about the conflicts of interest potential RTS posed that predate Butterworth's June 15 email regarding operational deficiencies and gender discrimination,[5] the district court drew the reasonable inference that Butterworth was terminated for cause. *See Kragor v. Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1307 (11th Cir. 2012). There was no genuine issue of material fact regarding whether LabCorp was contractually

---

[5]  E-mails between Farrell, Sumison, and Gornto on June 12 indicated LabCorp's concern with RTS work being done on LabCorp time, and specifically stated a concern with conflicts of interest, as did a June 19 email from Eric Feldman to Nelson and Miller. Nelson emailed Farrell on June 19, expressing his desire to terminate all four employees. Emails between Farrell and Nelson on June 20 and 21 demonstrate they were concerned with the fact Sznapstajler answered an RTS call during LabCorp working hours, and Nelson supported Farrell's desire to terminate all four employees. Sumison submitted a draft reprimand letter to Farrell regarding Butterworth, which stated that Butterworth would at the least be removed from her managerial position for violating LabCorp Code of Conduct Business Practices and Ethics by having a conflict of interest in a business venture with subordinates. Sumison also verified in her deposition that LabCorp management had multiple conversations as early as June 12 about firing the employees involved with RTS or disciplining while still retaining them, which was her preference, although she was convinced termination of Butterworth was proper during the June 22 meeting. Finally, Sznapstajler was terminated on the same day for his involvement with RTS, and his answering an RTS call while at work at LabCorp verified management's concerns about conflicts of interest.

11

entitled to terminate Butterworth for cause and without notice. We affirm on this claim.

### 2. Stock Options

Butterworth argues the statute of frauds does not apply to her breach of contract claim for failure to grant stock options. She contends the statute of frauds does not apply to past services performed under an employment contract of indefinite length that is terminable at will, and the contract to receive stock options was an aspect of that contract.

Under Florida's Statute of Frauds, "any agreement that is not to be performed within the space of one year from its making must be reduced to writing in order to be enforceable." *Rubenstein v. Primedica Healthcare, Inc.*, 755 So. 2d 746, 748 (Fla. 4th DCA 2000); Fla. Stat. § 725.01. Only if a contract could not possibly be performed within one year would it fall within the statute. *See Hesston Corp. v. Roche*, 599 So. 2d 148 (Fla. 5th DCA 1992). The Florida Statute of Frauds bars enforcement of an oral contract that was intended by the parties to last longer than a year, even though the contract could have been terminated for cause within a year. *All Brand Imps., Inc. v. Tampa Crown Distribs., Inc.*, 864 F.2d 748, 749 (11th Cir. 1989).

Making all reasonable factual inferences in favor of Butterworth, Polege's oral promise to continue her oral arrangement for stock options with Dynacare was

separate from her written employment agreement with LabCorp. *See Kragor*, 702 F.3d at 1307. No stock option provision was included in her written employment agreement with Dynacare, nor was any such provision included in her written agreement with LabCorp, including Butterworth's handwritten addenda at the bottom of the document. In a deposition, Butterworth indicated Polege made the promise after she signed the employment agreement, so the stock options promise could not have been superseded by the agreement, but it also could not be considered a part of the earlier agreement. She noted in her letter to Polege, which was submitted on the day she signed the contract, that she believed her employment agreement with LabCorp did not alter her separate stock options agreement with Dynacare.

Additionally, as the district court noted, Polege's stand-alone promise to give Butterworth 2,000 stock options each year that she was employed with LabCorp was an oral agreement that fell within the statute of frauds. In a deposition, Butterworth stated that Polege promised her stock options each year, and that the amount would vary from year to year between 2,000 and 5,000 options, indicating the agreement was necessarily a multi-year agreement that could not be completed within a single year. *See Hesston Corp.*, 599 So. 2d at 152. She also confirmed she understood the agreement would not just apply to her first year at LabCorp, but that it was a promise that would continue perpetually, and she

13

believed the options would not fully vest for three years.  As such, Butterworth's intent at the time she negotiated the stock options agreement with Polege was to enter into a contract that would be performed over a series of years, and LabCorp, through Polege, had the same intent.  *See All Brand Imps., Inc.*, 864 F.2d at 748 (stating the court must make a comprehensive inquiry into the intent of the parties at the time the alleged contract was made).  Therefore, both Butterworth and LabCorp contemplated the separate stock options agreement could not be satisfied within a year, and it had to be memorialized in writing in order to be enforced.  As a result, the oral agreement fell within the statute of frauds and was not enforceable as it was not memorialized in writing.  Fla. Stat. § 725.01; *Rubenstein*, 755 So. 2d at 748.  Thus, LabCorp was entitled to summary judgment in this respect.

### 3. Commissions

Butterworth argues although LabCorp had the right to modify its compensation plans, it had to give 30 days' notice to the affected employees. LabCorp failed to give the requisite notice, and the district court erred in finding LabCorp could amend its plans and take away earned commissions both retroactively and without notice.

"It is well established under Florida law that policy statements contained in employment manuals do not give rise to enforceable contract rights in Florida unless they contain specific language which expresses the parties' explicit mutual

14

agreement that the manual constitutes a separate employment contract." *Vega*, 564 F.3d at 1273 (quotations omitted).

LabCorp's compensation plans explicitly stated that they were not to be construed as contractual agreements. They were policy documents, subject to modification and termination at any time, and no evidence suggests that LabCorp and Butterworth considered the compensation plans to be contracts between them. Accordingly, no reasonable jury could conclude an enforceable contract for commission payments existed between the parties following execution of the written employment agreement in November 2002, and, therefore, the district court properly granted summary judgment to LabCorp on this breach of contract claim.

**AFFIRMED.**

15