[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 3, 2006
THOMAS K. KAHN
CLERK

No. 05-13076

_____

D. C. Docket No.  03-00374-CV-WDO-5

MINHNGOC P. TRAN,

Plaintiff-Appellant,

versus

THE BOEING COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(August 3, 2006)**

Before EDMONDSON, Chief Judge, BIRCH and ALARCÓN,[*] Circuit Judges.

---

[*]Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

PER CURIAM:

Plaintiff Minhngoc Tran sued The Boeing Company ("Boeing"), alleging that her employment was terminated in violation of Title VII and 42 U.S.C. § 1981 and that she suffered retaliation for complaining about her supervisor's alleged discrimination. The district court granted summary judgment to Boeing on all claims. Having discovered no reversible error, we affirm.

Plaintiff is an Asian-American who was born in Vietnam. Plaintiff worked as a Manufacturing Planner[1] for Boeing. Her husband, who is also Asian-American, had the same job at the same facility.

In 1998, then-Department Manager Richard Barbee appointed Sheila Hambrick as team leader over Plaintiff's department. Barbee and Hambrick both reported to Keith Castleberry, the Director of the Manufacturing Planner Department. In 2002, Barbee was demoted to Planner; and Hambrick became the Acting Manager.

In January 2002, Castleberry scheduled a mandatory meeting. Plaintiff testified that about a half-hour before the meeting was to start, Plaintiff asked Hambrick if Plaintiff could skip the meeting. Plaintiff testified she told Hambrick

---

[1]Manufacturing Planners create the instructions that production workers use to assemble airplanes.

2

this absence was so Plaintiff could go to the hospital and sign forms for her husband to be transported to a different hospital for an angioplasty. Hambrick testified Plaintiff said she wanted to leave work at 3:30; Hambrick told Plaintiff to attend the meeting because it was scheduled for 3:15 and would last only five or ten minutes. A different manager gave Plaintiff permission to skip the meeting.

About two months later, Plaintiff complained to Castleberry that Hambrick would not let Plaintiff miss the meeting because she was prejudiced against Asians. Hambrick had allowed a Caucasian employee to skip the meeting; before the meeting was announced, that employee had requested the afternoon off for a doctor's appointment. Castleberry talked to Hambrick about this incident; and Hambrick says she apologized to Plaintiff for any misunderstanding. Plaintiff denies Hambrick apologized.

Plaintiff claims that after this incident, she was retaliated against by being given more work than other Planners, by being denied permission to train for and to work on a new Apache project, and by Hambrick's suggesting Plaintiff move to another building. None of the Planners were allowed to train for or to work on the new Apache project.

About four months later, Hambrick asked Plaintiff to check another employee's work because the employee who usually would have had the

3

assignment was absent. Hambrick and Plaintiff had several conversations over two days about whether Plaintiff was sufficiently prioritizing this assignment. Plaintiff says Hambrick yelled at her during these conversations; Hambrick said she did not yell, but did speak firmly to Plaintiff. Plaintiff says that after the last of the conversations, Hambrick muttered "stupid Asian" as she walked away from Plaintiff's cubicle. Boeing neither admits nor denies that Hambrick made the statement.

During early 2002, Boeing determined that Plaintiff's facility would have to undergo a reduction in force ("RIF"). Boeing set forth assessment guidelines to identify layoff candidates. Planners were evaluated and graded in several categories, including quality of work, job knowledge/experience, versatility, aptitude and judgment, customer satisfaction, and communication skills. Employees were also credited for their length of service with Boeing and their education, training, and awards. Once layoff candidates were identified, a decision narrative was written explaining the decision.

Hambrick conducted the assessment and rated Plaintiff fourteenth out of fifteen Planners.[2] Plaintiff received her lowest score for communication skills. In

---

[2]An earlier assessment of Plaintiff by Barbee had rated Plaintiff thirteenth out of then-seventeen employees.

4

the decision narrative, Hambrick wrote that Plaintiff possessed sufficient technical strength but lacked "overall aptitude for following work instructions" and exhibited an "unwillingness to take on new challenges in a dynamic work environment[.]" Hambrick also wrote that Plaintiff had been uncooperative when asked to make changes to her existing work scope. Hambrick said the findings demonstrated that Plaintiff did not have the team skills necessary for the department.

Hambrick also selected Richard Barbee for layoff; Barbee had rated fifteenth in the department. Plaintiff's husband, who is Asian-American, was not selected for layoff. Hambrick submitted her findings to Castleberry, who reviewed and approved Hambrick's assessments.

We review de novo the district court's grant of summary judgment to Boeing. Armindo v. Padlocker, Inc., 209 F.3d 1319, 1321 (11th Cir. 2000).

Plaintiff first contends the district court did not follow properly the summary judgment standard. The district court determined that Plaintiff had admitted Boeing's version of the facts and based its order on Boeing's version, although the court's order noted where Plaintiff disagreed with Boeing's facts and drew reasonable inferences in Plaintiff's favor. The district court said Plaintiff's

5

response to Boeing's Statement of Undisputed Facts violated Local Rule 56, which says, in relevant part:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. *All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate* (emphasis added).

The district court correctly determined Plaintiff violated Local Rule 56. Plaintiff's response did not address specifically the numbered facts contained in Boeing's Statement of Undisputed Facts.

We find no error in the district court's treatment of the facts. The district court did not grant summary judgment simply because Plaintiff "admitted" Boeing's facts; the court examined the materials Boeing submitted in support of summary judgment and discussed the reasons for granting summary judgment. See U.S. v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101-02 (11th Cir. 2004) (district court cannot grant summary judgment just because the motion was unopposed, but must at least review all the evidentiary materials submitted in support of the motion for summary judgment to ensure the motion is supported).

6

**Discrimination Claims**

Plaintiff claims there is direct evidence of racial discrimination because Hambrick called Plaintiff a "stupid Asian" on the same day Hambrick wrote the decision narrative. The comment was made during a dispute between Hambrick and Plaintiff about when Plaintiff would work on certain assignments that Hambrick had asked Plaintiff to prioritize. Even if Hambrick did make the statement, it is not direct evidence of racial discrimination in Plaintiff's termination.

Direct evidence is "evidence, which if believed, proves [the] existence of fact in issue without inference or presumption." Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 n.6 (11th Cir. 1987) (citing Black's Law Dictionary 413 (5th ed. 1979)). Hambrick's comment does not specifically address, nor was it made in the context of, Plaintiff's termination from employment. See Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1227-28 (11th Cir. 2002) (noting that "[t]o be direct evidence, the remark must indicate that the employment decision in question was motivated by race," and determining that comment by employee's future supervisor that "[w]e'll burn his black ass" was not direct evidence of discrimination in part because comment was not directly related to employee's

termination); Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998) (explaining that "remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination"). Thus, it requires an inference to say Hambrick's comment is evidence that Plaintiff was selected for layoff because of her race. See Burrell v. Bd. of Trs. of Ga. Military Coll., 125 F.3d 1390, 1393 (11th Cir. 1997) (concluding that comment, made by CEO of plaintiff's employer in response to plaintiff's interest in executive vice president position a year before plaintiff's termination, that CEO wanted to hire a man for the position because too many women already filled officer positions at best suggested -- but did not prove -- a discriminatory motive). This idea is not changed because the comment was made the day Hambrick completed the decision narrative; the comment at best *suggests* a discriminatory motive. See Damon v. Fleming Supermarkets of Fl., Inc., 196 F.3d 1354, 1359 (11th Cir. 1999) (explaining that manager's comment to plaintiff's replacement -- made immediately after plaintiff's termination -- that the company needed to promote aggressive young men, like the replacement, was not direct evidence of age discrimination against plaintiff because the comment required an inference that the manager's interest in promoting young men motivated his decision to terminate plaintiff). "By definition, then, it is circumstantial evidence." Rollins, 833 F.2d at 1528 n.6.

Plaintiff also claims sufficient circumstantial evidence of discrimination for her claim to survive summary judgment. To establish discrimination in a RIF case using circumstantial evidence, Plaintiff must (1) show she was a member of a protected group and was adversely affected by an employment decision, (2) prove she was qualified for her own position, and (3) produce sufficient evidence from which a rational factfinder could conclude that Boeing intended to discriminate against her in making the discharge decision. Standard, 161 F.3d at 1331. Boeing has conceded that Plaintiff has shown the first two elements.

Once Plaintiff establishes a prima facie case, the burden then shifts to Boeing to offer a legitimate, nondiscriminatory reason for Plaintiff's termination. McDonnell Douglas Corp. v. Green, 93 S.Ct 1817, 1824 (1973). Plaintiff must then show that each reason offered by Boeing was pretext, by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (citation and internal quotation marks omitted).

The district court granted summary judgment to Boeing because it determined Plaintiff presented insufficient evidence that her employment was

terminated for discriminatory reasons or that the reasons Boeing offered were pretextual. We agree that Plaintiff did not establish that Boeing's reasons were pretextual.

We assume for this analysis that Plaintiff established a prima facie case. Boeing has articulated a legitimate, nondiscriminatory reason for ending Plaintiff's employment: that because of a RIF, two Planners were to be laid off, and that based on an evaluation form applied to all the Planners, Plaintiff was one of the two Planners least able to perform the work that would remain after the RIF.

In response, Plaintiff says she produced sufficient evidence for a reasonable factfinder to conclude that the proffered reasons were not actually the motivation for the discharge. Plaintiff's main argument is that Boeing was inconsistent about the reason for her layoff: she claims it was only during the lawsuit, and not during the decision narrative, that Boeing said Plaintiff's communication skills were the reason for her layoff. But Boeing was not inconsistent because the employee ratings form used to evaluate Plaintiff contained a category for communication skills; and Plaintiff's lowest score was in that category.

That Boeing evaluated employees' communication skills in no way indicates discrimination based on race. Plaintiff presented no evidence that the score for communication skills was related to an employee's ability to speak

10

English.  Boeing's employee evaluators, Castleberry and Hambrick, agreed that the "communication skills" category reflected proficiency at communicating with customers and team members.

Plaintiff's argument that Barbee's layoff demonstrates pretext also fails. Even if this Court were to accept Plaintiff's argument that this layoff demonstrated that the RIF process was flawed -- because a former Manager could not be the poorest-rated Planner -- that fact would not demonstrate that the reasons articulated for Plaintiff's layoff were pretextual.

Tran's remaining arguments consist of disagreements with evidence presented by Boeing to demonstrate its reasons for selecting Plaintiff for layoff. She, however, does not present evidence that Boeing's articulated reasons are pretextual; and her disagreement with the assessment is insufficient to establish pretext.  See Standard, 161 F.3d at 1333 ("The heart of the pretext inquiry is not whether the employee agrees with the reasons that the employer gives for the discharge, but whether the employer really was motivated by those reasons."). The district court properly granted summary judgment on this claim.

## Retaliation Claim

The district court also properly granted summary judgment to Boeing on Plaintiff's retaliation claim. To establish a prima facie case of retaliation under Title VII, Plaintiff must show that (1) she engaged in statutorily protected expression, (2) she suffered an adverse employment act, and (3) there is a causal connection between the two events. Brochu v. City of Riviera Beach, 304 F.3d 1144, 1155 (11th Cir. 2002). Plaintiff cannot establish the third element.

Plaintiffs claims her statutorily protected expression was her complaint to Castleberry that Hambrick discriminated against Plaintiff by not letting Plaintiff miss a mandatory meeting, while letting a Caucasian worker miss the meeting. Plaintiff also claims that Hambrick, Castleberry, and Plaintiff discussed the complaint together; and Hambrick was thus aware of Plaintiff's allegations of discrimination. We find it unnecessary to decide whether Plaintiff's complaint constituted protected activity -- or whether Hambrick was aware of the complaint -- but assume for the sake of argument Plaintiff's version of the facts.

An adverse employment act must be "materially adverse to a reasonable employee." Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2409

(2006). Plaintiff suffered an adverse employment act when she was terminated from employment.[3]

To establish a causal connection, Plaintiff must show that the decision-makers were aware of the protected conduct and that the protected activity and the adverse act were at least somewhat related and in close temporal proximity. Gupta v. Fl. Bd. of Regents, 212 F.3d 571, 590 (11th Cir. 2000); Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004).

Plaintiff's argument is that, about four months after she complained to Castleberry, Hambrick recommended Plaintiff be laid off. A four-month gap between protected activity and the adverse employment event is too long, by itself, to establish retaliation. See Higdon, 393 F.3d at 1221 (saying three-month interval between the protected speech and adverse act is too long, standing alone, to establish an inference of retaliation). Plaintiff has presented no other causation evidence. Therefore, the district court properly granted summary judgment to Boeing on the retaliation claim.

**AFFIRMED.**

---

[3]None of Plaintiff's other allegations of retaliation -- receiving excess work, being denied permission to train for and work on a new Apache project (that no Planners were given permission to train for and work on), and almost being moved to another building -- rise to the level of an adverse employment act.