[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  16-17251

_____

D.C. Docket No. 3:15-cv-00632-BJD-MCR

BILL NANJI VIRA,

Plaintiff - Appellant,

versus

CROWLEY LINER SERVICES, INC.,
a foreign profit corporation,
CROWLEY MARITIME CORPORATION,
a foreign profit corporation,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 2, 2018)

Before: WILLIAM PRYOR, JILL PRYOR and CLEVENGER,* Circuit Judges.

CLEVENGER, Circuit Judge:

_____

*Honorable Raymond C. Clevenger III, United States Circuit Judge for the Federal Circuit,
sitting by designation.

Bill Vira appeals the order of the U.S. District Court for the Middle District of Florida granting summary judgment on his age discrimination claim in violation of the Age Discrimination in Employment Act ("ADEA")[1] and Florida Civil Rights Act ("FCRA"),[2] and retaliation and interference claims in violation of the Family and Medical Leave Act ("FMLA")[3] in favor of defendants, Crowley Liner Services, Inc. and Crowley Maritime Corporation.  The issue on appeal is whether the district court erred by concluding defendants provided a sufficient legitimate and nondiscriminatory reason for laying off Mr. Vira, and whether any genuine issues of material fact remain. The district court did not err, and Mr. Vira's arguments on appeal do not show a genuine issue of material fact. Therefore, we affirm the district court's grant of summary judgment.

## I.    BACKGROUND

Crowley Maritime Corporation is a marine solutions, logistics, and transportation company, which, through its subsidiary Crowley Liner Services (herein "Crowley"), operates barges out of Jacksonville, Florida and throughout the Caribbean. Bill Vira was an employee of Crowley for just over 12 years, until he was laid off in December 2014. Throughout most of his employment, Mr. Vira

---

[1] 29 U.S.C. §§ 621-34.

[2] Ch. 760, pt. I, Fla. Stat.

[3] 29 U.S.C. §§ 2601-54.

2

worked as a maintenance supervisor on the night shift, and generally received positive feedback.

In January 2014, he became the day-shift maintenance supervisor of Crowley's reefer[4] department. Crowley interviewed another individual, Ezra Clark, to take over Mr. Vira's prior night shift position, but instead hired him for another management position. Mr. Clark and Mr. Vira each reported to Tracy Odom, one of Crowley's Directors, who in turn reported to Maureen Cunningham.

One of Mr. Vira's job responsibilities as a day-shift supervisor was maintenance of barge power packs. In early August 2014, Mr. Vira called Mr. Odom to inform him of a double power pack failure on a barge, and that he could not travel to the barge to fix the problem because of his fear of water. Mr. Odom went to the barge himself, and reported the incident to Ms. Cunningham. Two weeks later, Mr. Odom transferred responsibility of the power packs to Mr. Clark.

Later that month, Mr. Vira began experiencing heart problems, and took leave from Crowley, as authorized by the Family and Medical Leave Act. Before returning to work in September, Mr. Vira contacted Crowley's third-party administrator requesting additional FMLA leave through October 26, 2014. When he returned to work on September 19, 2014, he told Mr. Odom he would need

---

[4] Reefers are refrigerated container units that may be transported.

additional time off for therapy, to which Mr. Odom replied "[t]hat's fine. . . that was okay."

On September 30, 2014, Crowley announced a company-wide layoff in order to improve financial performance. The following day, Mr. Vira was informed that he was one of approximately one-hundred employees to be laid off. Ms. Cunningham had met with Mr. Odom prior to the announcement to explain why Mr. Vira was chosen, and that Mr. Clark would take over Mr. Vira's job responsibilities. According to Mr. Odom's deposition testimony, Ms. Cunningham stated she saw an upswing in Mr. Clark's performance, was impressed by his cost-saving initiatives, wanted a manager in charge of the reefer yard, and having Mr. Clark take over Mr. Vira's responsibilities would cut costs. There is no evidence the two discussed Mr. Vira's medical condition. Ms. Cunningham has since deceased, and was unavailable to testify.

Despite being laid off, Mr. Vira continued working until December 17, 2014 in order to receive a work-completion bonus, and used accrued time off until the end of the year. When Mr. Vira left, Mr. Clark assumed Mr. Vira's job responsibilities. Mr. Vira was 64 at the time, and Mr. Clark was under 40. Mr. Clark had never taken FMLA leave, and although he had less experience, his salary was higher.

After being laid off, Mr. Vira filed suit against Crowley, alleging race and national origin discrimination, age discrimination, disability discrimination, and FMLA retaliation and interference. Crowley moved for summary judgment on all of Mr. Vira's claims, and the district court entered an Order Granting Summary Judgment on all counts. He appeals only the portions of the order related to his age discrimination, FMLA retaliation and FMLA interference claims.

In its order, the district court examined the age discrimination and FMLA retaliation claims under the *McDonnell Douglas*[5] burden-shifting framework, and found that Mr. Vira proved a *prima facie* case for each claim. However, the district court found Crowley rebutted the inference of discrimination and retaliation by providing a legitimate and non-discriminatory reason for his termination – to reduce costs and increase profitability. The district court then granted summary judgment because Mr. Vira failed to provide any comparative evidence that the legitimate reasons given were pretext for discrimination and retaliation. The district court also found that Mr. Vira failed to show causation for his FMLA interference claim, and granted summary judgment accordingly.

## II.    STANDARD OF REVIEW

Grants of summary judgment are reviewed *de novo*, viewing all facts and reasonable inferences in the light most favorable to the nonmoving party. *Allison v.*

---

[5] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). A grant of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." *Clemons v. Dougherty Cty., Ga.,* 684 F.2d 1365, 1369 (11th Cir. 1982). Admissions of evidence by the district court are reviewed under the abuse of discretion standard. *United States v. Reid*, 69 F.3d 1109, 1114 (11th Cir. 1995).

### III.   DISCUSSION

*A.      The District Court Properly Granted Summary Judgment for the Age Discrimination and FMLA Retaliation Claims.*

This circuit applies the *McDonnell Douglas* burden-shifting framework to claims of age discrimination and FMLA retaliation. *See Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (age discrimination); *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (FMLA retaliation). Under the *McDonnell Douglas* framework, the plaintiff must first offer evidence sufficient to establish a *prima facie* case of discrimination and/or retaliation. *Kragor*, 702 F.3d at 1308. Once a *prima facie* case is made, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the employer meets its burden, the plaintiff must

6

then show that the employer's stated reason is pretext for discrimination and/or retaliation. *Id.*

We begin by examining the *prima facie* cases of age discrimination and FMLA retaliation. To establish a *prima facie* case of age discrimination, a plaintiff must show: (1) that he or she was a member of a protected group of persons between the ages of forty and seventy; (2) that he or she was subject to an adverse employment action; (3) that a substantially younger person filled the position from which he or she was discharged; and (4) that he was qualified to do the job that he or she was discharged from. *Id.* The district court properly concluded that Appellant established a *prima facie* case because he was (1) 64 years old; (2) at the time he was laid off; (3) where he was replaced by another employee under the age of 40; (4) despite the fact that he was qualified for his job.[6]

The district court also properly found a *prima facie* case of FMLA retaliation. To succeed on a retaliation claim, the plaintiff "must show that his employer intentionally discriminated against him for exercising an FMLA right." *Martin v. Brevard Cty. Pub. Sch.*, 543 F.3d 1261, 1267 (11th Cir. 2008) (emphasis omitted). Without direct evidence of retaliatory intent, "an employee claiming FMLA retaliation must show that (1) he engaged in a statutorily protected activity, (2) he suffered an adverse employment decision, and (3) the decision was causally

---

[6] Crowley argued for the first time on appeal that Mr. Vira was unqualified for his job, but the district court was explicit: "Defendant does not dispute that Plaintiff was qualified for his supervisor position."

7

related to the protected activity." *Id.* at 1268. Neither party disputes the first two prongs, or the facts underlying the third prong. The only dispute remaining is whether those facts constitute a sufficient causal link between Mr. Vira taking FMLA leave and his termination.

To prove the decision was causally related to the protected activity at the *prima facie* stage, the plaintiff may rely on a close temporal proximity between the two events. *Hurlbert*, 439 F.3d at 1298. While a few days is sufficient for a causal connection, *id.*, a few months is not. *Brisk v. Shoreline Found., Inc.*, 654 F. App'x 415, 416 (11th Cir. 2016) (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). Appellant claims that no more than 8 days after he returned from FMLA leave, Crowley decided to fire him. He was informed of that decision 13 days after he returned from FMLA leave. Whether 8 or 13 days, the timing between the two events suggests a causal relationship sufficient to establish a *prima facie* case of FMLA retaliation.

Upon establishing a *prima facie* case of discrimination and retaliation, the burden of production shifts to the defendant to provide a legitimate and nondiscriminatory reason for the adverse employment action. *Kragor*, 702 F.3d at 1308; *Sims v. MVM, Inc.*, 704 F.3d 1327, 1333 (11th Cir. 2013). Crowley provided its layoff – otherwise known as a reduction-in-force (herein "RIF") – plus Ms. Cunningham's statements explaining why Mr. Vira was included in the layoff as

its legitimate and nondiscriminatory reason. Appellant argues that Ms. Cunningham's statements are inadmissible hearsay, however, and the only admissible evidence Crowley has is its RIF. Appellant believes that a gap exists in the case law, that this Court has suggested defendants cannot rely solely on the economic benefits of a RIF, such as reduced costs to increase profitability, without a particular reason for including the plaintiff in the RIF, and that we should now explicitly require defendants to provide such a "plus factor" in addition to the generalized benefits of a RIF.

It is true that this Court has looked for "plus factors" in combination with a RIF to determine whether a particular decision to terminate an employee was nondiscriminatory or nonretaliatory. *See Tidwell v. Carter Prods.*, 135 F.3d 1422, 1426 (11th Cir. 1998) (stating that offering a RIF as a legitimate, nondiscriminatory reason "eliminat[es] the presumption of discrimination," while noting other evidence presented at trial showed the RIF was nondiscriminatory); *see also Padilla v. N. Broward Hosp. Dist.*, 270 F. App'x. 966, 971-72 (11th Cir. 2008) (finding a RIF plus legitimate, subjective considerations of the decisionmaker constituted a nondiscriminatory reason); *Tran v. Boeing Co.*, 190 F. App'x 929, 933 (11th Cir. 2006) (per curiam) (finding that a RIF plus individualized evaluations that suggested plaintiff was the "least able to perform the work that would remain after the RIF" constituted a legitimate and

9

nondiscriminatory reason); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1084 n.5 (11th Cir. 1990) (finding a RIF plus evidence of an employee's poor performance constituted a nondiscriminatory reason). But we do not need to reach whether a RIF alone is sufficient for a defendant to meet its burden, because defendants here provided a "plus factor" – Ms. Cunningham's statements explaining why Mr. Vira was included in the RIF.

Ms. Cunningham's statements are properly in the record in this case, because those statements are not hearsay, or fall within a hearsay exception. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. *Macuba v. Deboer*, 193 F.3d 1316, 1322 n. 11 (11th Cir. 1999). "The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment." *Id.* at 1322 (footnote and citation omitted). Some of Ms. Cunningham's statements – that she believed Mr. Clark was more dynamic and cost-saving – are not hearsay, because they are not being offered to prove the truth of those assertions. The remaining statements – that she claimed Mr. Vira's layoff was a "financial" decision and that she preferred a manager in that position – are hearsay, but fall within an exception.

A statement that would otherwise be hearsay may nonetheless be admitted if it is "[a] statement of the declarant's then-existing state of mind. . . ." Fed. R. Evid. 803(3). Ms. Cunningham's statements that she chose to lay off Mr. Vira for

10

"financial" and staffing reasons are just that – statements regarding her state of mind when she selected Mr. Vira for the layoff. Appellant argues "then-existing" requires the statements to be made the moment Ms. Cunningham first decided to lay off Mr. Vira, rather than several days later in a conversation with Mr. Odom. However, a declarant may hold a state of mind over a period of time.  A declarant's statement about his or her continuous state of mind is not hearsay, but a declarant's statement of a past memory or belief offered to prove the fact remembered or believed is hearsay.  *See e.g. United States v. Cardascia*, 951 F.2d 474, 488 (2d Cir. 1991) (noting that an individual may hold a continuous state of mind that falls within the hearsay exception, while a statement of a past memory or belief must be excluded as hearsay); *see also United States v. Veltmann*, 6 F.3d 1483, 1494 (11th Cir. 1993) (admitting prior suicidal statements of a victim to show her state of mind, even though they were made several months before her suicide). Ms. Cunningham statements to Mr. Odom occurred after Appellant alleges she decided to lay off Mr. Vira, but before the layoffs were announced. Without any evidence indicating she changed her mind, she maintained a continuous state of mind for the purposes of hearsay at least until Mr. Vira was notified. Thus, the district court was not required to exclude those statements, which explain why Mr. Vira was chosen to be laid off in the RIF.

11

Once a defendant provides a legitimate and nondiscriminatory reason for the adverse employment action, the burden falls back to the plaintiff to prove those reasons were pretext for discrimination and/or retaliation. *Kragor*, 702 F.3d at 1308. In order to show pretext, the plaintiff must show both that the employer's explanation was false, and that discrimination was the real reason for his decision. *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.,* 446 F.3d 1160, 1163 (11th Cir. 2006). The district court found that Mr. Vira could not show pretext because he did not provide any comparator evidence,[7] and Appellant does not challenge this finding on appeal. Instead, Appellant offers several arguments to support his claim of pretext: (1) that Crowley deviated from its standard procedures by not documenting its reasons for including him in the RIF; (2) that he was not fired for financial reasons because his replacement had a higher salary; (3) that Mr. Odom provided shifting reasons for firing Mr. Vira – first claiming it was financial, then suggesting Ms. Cunningham wanted a manager in his position; and (4) that Mr. Vira had a record of good performance. However, none of these arguments involve a genuine issue of material fact, and none establish that Crowley's legitimate and nondiscriminatory reasons in fact are pretext for discrimination or retaliation.

---

[7] A plaintiff may show pretext many ways, including showing that a similarly situated individual was treated differently than the plaintiff under similar circumstances. *See Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1277 (11th Cir. 2008) (discussing the use of comparator evidence in the pretext analysis); *Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1563 n. 20 (11th Cir. 1987) (noting that comparator evidence may be used to show pretext).

Appellant cites the fact that Crowley did not record the reason for including Mr. Vira in the layoff, which is inconsistent with corporate policy, as evidence of pretext. The written corporate policy, however, requires only "[a] record of employees on layoff [be] maintained by the Human Resources Department," and does not require recording particularized reasons for each individual to be laid off. The speculative deposition testimony of the company's regional human resources manager – believing managers would record the reasons why they would select someone for layoff – does not create a genuine issue of material fact as to whether Crowley acted inconsistently with its policy, because Crowley acted in accordance with its written policy.

Appellant's argument that Ms. Cunningham's decision cannot be financial because Mr. Clark earned more money than Mr. Vira also does not indicate pretext. Mr. Clark was already an employee of Crowley at the time of the layoffs, and the layoff resulted in Crowley paying one salary, instead of two.

The fact that Mr. Odom provided two different reasons for Mr. Vira's layoff – that it was financial, and that Ms. Cunningham wanted a manager in that position – does not show pretext, either. Contrary to Appellant's assertions, the two reasons do not contradict one another, but rather support each other. *See Tidwell*, 135 F.3d at 1428 (stating that when an employer provides additional, previously undisclosed

reasons, such as performance issues, for laying off an employee, that does not prove pretext).

Finally, the fact that Mr. Vira was laid off despite receiving numerous positive performance reviews, alone does not constitute pretext. Cost generally motivates layoffs, exposing even well-regarded employees to the risk of being laid off. Without any evidence supporting pretext, the district court properly granted summary judgment on Mr. Vira's age discrimination and FMLA retaliation claims in favor of Crowley.

B.    *The District Court Properly Granted Summary Judgment for the FMLA Interference Claim.*

To establish a claim of FMLA interference, "an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." *Strickland v. Water Works & Sewer Bd. of Birmingham,* 239 F.3d 1199, 1206–07 (11th Cir. 2001). The employer's intent or motives are irrelevant to the analysis, *id.* at 1208, but the plaintiff's request must have been the proximate cause of the termination. *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1242 (11th Cir. 2010). A district court may grant summary judgment against a FMLA interference claim if it is undisputed that the employer would have terminated the employee regardless. *See Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1236 (11th Cir. 2010) ("[A]n employee can be dismissed, preventing her from exercising her right to commence FMLA leave, without hereby violating the FMLA, if the

14

employee would have been dismissed regardless of any request for FMLA leave.").

Here, the district court found that Mr. Vira failed to provide any evidence that his FMLA request was the proximate cause of his termination, and that the record evidence demonstrates his layoff was financially-motivated and unrelated to his use of FMLA leave. In response, Appellant offers only the temporal relationship between the FMLA leave and his termination as evidence of causation, but this does not raise a genuine issue of material fact. Therefore, summary judgment was proper.

## IV. CONCLUSION

We **AFFIRM** the district court's order of summary judgment.

15