[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-16052

_____

D.C. Docket No. 1:10-cv-00125-WCO

BARBARA KRAGOR

Plaintiff-Appellant,

versus

TAKEDA PHARMACEUTICALS AMERICA, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(December 20, 2012)

Before TJOFLAT, CARNES, and JORDAN, Circuit Judges.

JORDAN, Circuit Judge:

It may be that a "[c]ontradiction is not a sign of falsity, nor the lack of contradiction a sign of truth." BLAISE PASCAL, PASCAL'S PENSÉES 104 (E.P. Dutton & Co., Inc. 1958) (1670). But under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, a contradiction of the employer's proffered reason for the

termination of an employee is sometimes enough, when combined with other evidence, to allow a jury to find that the firing was the result of unlawful discrimination. *See generally Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."). In this case, the corporate executive who terminated the plaintiff for alleged misconduct later said that the plaintiff was an exceptional employee who had done nothing wrong, had done everything right, and should not have been fired. We hold—not surprisingly we think—that such evidence, when combined with a prima facie case, lets the plaintiff get to a jury on her age discrimination claim, and accordingly reverse the district court's grant of summary judgment in favor of the employer.

**I**

Barbara Kragor began working for Takeda Pharmaceuticals in 1999. Because the pharmaceutical industry is heavily regulated by the federal government, Takeda adopted strict conduct policies for its employees, including prohibitions against providing any items of value to a healthcare provider (e.g., a doctor) to induce the provider to prescribe the company's products.

In 2008, Takeda began investigating whether Ms. Kragor had provided a doctor

2

with improper gifts and benefits. A few months later, Dan Orlando, a Takeda vice-president, terminated Ms. Kragor because she had violated, or at a minimum had engaged in behavior that appeared to violate, the company's conduct policies. Ms. Kragor, who was 49 years old at the time of the termination, believed that she had been the victim of age discrimination, and sued Takeda under the ADEA, 29 U.S.C. § 623(a)(1).

The district court granted summary judgment in favor of Takeda because Ms. Kragor did not present sufficient evidence from which a jury could conclude that Takeda's proffered nondiscriminatory reason for the termination—that Ms. Kragor violated (or appeared to violate) the company's conduct policies—was pretextual. *See generally Chapman v. AI Transport*, 229 F.3d 1012, 1037 (11th Cir. 2000) (en banc)  ("In order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual."). Ms. Kragor then appealed.

## II

We exercise plenary review of the district court's grant of summary judgment, viewing all the evidence, and drawing all reasonable factual inferences, in favor of Ms. Kragor. *See Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008). Summary judgment is appropriate only when "there is no genuine dispute as to any

3

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Dixon v. Hallmark Cos., Inc.*, 627 F.3d 849, 854 (11th Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## A

A claim of unlawful age discrimination under the ADEA may be established through direct or circumstantial evidence. *See Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 512 F.3d 1296, 1300 (11th Cir. 2008). When such a claim is based on circumstantial evidence, we analyze the allocation of burdens and the presentation of proof under the framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Chapman*, 229 F.3d at 1024 (applying *McDonnell Douglas* to evaluate ADEA claims); *Mauter v. Hardy Corp.*, 825 F.2d 1554, 1556 (11th Cir. 1987) (same).

Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination, which "in effect creates a presumption that the employer unlawfully discriminated against the employee." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). To make out a prima facie case of age discrimination, the plaintiff must show four things: "(1) that she was a member of the protected group of persons

4

between the ages of forty and seventy; (2) that she was subject to adverse employment action; (3) that a substantially younger person filled the position that she sought or from which she was discharged; and (4) that she was qualified to do the job for which she was rejected." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999).

Once the plaintiff establishes a prima facie case of age discrimination, the burden shifts to the employer to rebut the presumption of discrimination with evidence of a legitimate, nondiscriminatory reason for the adverse employment action. *See McDonnell Douglas*, 411 U.S. at 802–03. "This burden is one of production, not persuasion . . . ." *Reeves*, 530 U.S. at 142. Thus, "[t]o satisfy that burden of production, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (quoting *Burdine*, 450 U.S. at 254–55). If the employer produces evidence of a legitimate, nondiscriminatory reason for the adverse action, the plaintiff is afforded an opportunity to show that the employer's stated reason is a pretext for discrimination. *See, e.g., Reeves*, 530 U.S. at 143;

5

*McDonnell Douglas,* 411 U.S. at 804.[1]

The plaintiff can show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. "In other words, the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs*, 106 F.3d at 1528. If a plaintiff produces sufficient evidence that the employer's proffered reason is merely pretextual, that evidence may sometimes be enough to preclude summary judgment in favor of the employer. *See Reeves*, 530 U.S. at 148. *See also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.").

---

[1] Some of our post-*Reeves* cases have described this as the burden shifting back to the plaintiff to show pretext, *see, e.g., Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1344 (11th Cir. 2003), but it is more accurate to say that once the employer offers evidence of a legitimate, nondiscriminatory reason for the adverse action, "the *McDonnell Douglas* framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [i]s discrimination *vel non*." *Reeves*, 530 U.S. at 142–43 (citations and internal quotation marks omitted). The opportunity provided to a plaintiff to show pretext is simply an opportunity to present evidence from which the trier of fact can find unlawful discrimination.

**B**

It is undisputed that Ms. Kragor established a prima facie case of age discrimination under the ADEA: she was a member of the protected age group because she was over the age of 40; she was discharged by Takeda; she was replaced by a younger person who was outside the protected age group; and she was qualified for the position from which she was terminated. It is also undisputed that Takeda presented evidence of a legitimate, nondiscriminatory reason for terminating Ms. Kragor—that Ms. Kragor violated (or appeared to violate) its policies governing employee interactions with healthcare providers. Thus, the narrow issue on appeal is whether Ms. Kragor presented sufficient evidence of pretext to create a genuine issue of material fact as to whether Takeda unlawfully discriminated against her because of her age.

We begin with Takeda's proffered reason for discharging Ms. Kragor. *See Chapman*, 229 F.3d at 1030 ("Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason."). In May of 2008, Takeda began looking into allegations that Ms. Kragor had violated the company's conduct policies by (1) providing Dr. Bruce Bode—a physician who frequently used Takeda's products and was one of the company's best

7

clients—with discounted Delta Airlines tickets (referred to by the parties as "buddy passes"), and (2) approving reimbursements to Takeda sales representatives who had improperly expensed Dr. Bode's holiday parties. Takeda interviewed current and former employees (including Ms. Kragor) and reviewed emails and other documents as part of its investigation.

For her part, Ms. Kragor provided explanations for the things she was accused of doing. First, regarding the buddy passes, Ms. Kragor maintained that she did not personally provide Dr. Bode with discounted airline tickets. Ms. Kragor said that her husband Bud Kragor, a Delta Airlines pilot who received the discounted tickets as part of his employment, gave or sold the tickets to Dr. Bode directly and independently of her professional relationship with Dr. Bode and her employment at Takeda. Ms. Kragor explained that Mr. Kragor had a personal relationship with Dr. Bode which predated her own professional relationship with him, and that she only became aware of their personal relationship after she met Dr. Bode in her capacity as a Takeda sales representative. Ms. Kragor did concede that, on occasion, she would act as an intermediary between her husband and Dr. Bode to facilitate the sale or transfer of the discounted tickets when Mr. Kragor was unavailable, but she maintained that she did so separate and apart from her employment at Takeda. Second, with respect to Dr. Bode's holiday parties, Ms. Kragor denied knowing that the sales representatives had

8

sought reimbursement for those parties on their expense reports. She said that she had approved the expense reports because there was no indication that the luncheon expenses on the reports were for Dr. Bode's holiday parties.

At the conclusion of the internal investigation, individuals from Takeda's human resources, legal, and compliance departments collectively determined that Ms. Kragor had violated, or had engaged in behavior that appeared to violate, the company's conduct policies. Accordingly, they recommended to Mr. Orlando, a Takeda vice-president, that Ms. Kragor be terminated. Mr. Orlando was not involved in the investigation, but after reviewing the information and documents obtained during the investigation, he accepted the recommendation and terminated Ms. Kragor's employment. As he explained in his declaration, Mr. Orlando concluded that Ms. Kragor's actions with respect to the buddy passes "gave rise to the appearance" of a violation of Takeda's conduct policies. *See* R1:52, Exhibit 2 at ¶ 9.

As permitted under cases like *McDonnell Douglas* and *Reeves*, Ms. Kragor presented evidence in an effort to establish that Takeda's proffered reason for discharging her—i.e., that she violated (or appeared to violate) the company's conduct policies—was pretextual. Among other things, Ms. Kragor offered evidence that Mr. Orlando, who made the final decision to terminate her employment, completely disavowed Takeda's proffered nondiscriminatory reason for the discharge in a

9

subsequent conversation with Dr. Bode. That conversation, according to Dr. Bode's declaration, went as follows:

> After Barbara Kragor was fired by Takeda I made numerous phone calls to upper level management in order to make clear that Barbara Kragor had nothing to do with buddy passes. I received a telephone call from Dan Orlando. Dan Orlando told me that Barbara Kragor was an exceptional employee, that she had done nothing wrong, that she had done everything right, and further indicated that she should not have been fired.

R1:56, Exhibit 4 at ¶ 8. Significantly, neither Ms. Kragor nor Takeda deposed Mr. Orlando or Dr. Bode. The district court, therefore, was faced with dueling declarations (Mr. Orlando's and Dr. Bode's) concerning the validity of Takeda's proffered nondiscriminatory reason for Ms. Kragor's termination.

In granting summary judgment to Takeda, the district court ruled that Dr. Bode's declaration did not create a genuine issue of material fact as to pretext because Mr. Orlando was only expressing his personal beliefs to Dr. Bode:

> The statements attributed to Orlando by Dr. Bode, if true, indicate that Orlando disagreed with the determination made by the Human Resources, Legal, and Compliance Departments that plaintiff's actions constituted misconduct meriting termination, but do not controvert the undisputed fact that he accepted the termination recommendation that was presented to him. Orlando's personal belief regarding plaintiff's conduct—where it remains undisputed that he accepted the recommendation of those with greater expertise regarding the laws underlying defendant's Compliance Policies—does not create a genuine issue of material fact regarding whether defendant presented an "honest explanation" for the termination decision.

10

R1:61 at 22. As we explain below, we disagree with the district court's analysis.

When a plaintiff chooses to attack the veracity of the employer's proffered reason, "[the] inquiry is limited to whether the employer gave an honest explanation of its behavior." *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir. 1991). The district court's characterization of Mr. Orlando's comments to Dr. Bode is a reasonable one, but it is not the only permissible construction of the remarks. It is also reasonable to interpret the statements as Mr. Orlando's admission that the proffered nondiscriminatory reason was a cover-up for discrimination. At the Rule 56 stage, where reasonable inferences are to be drawn in favor of the party opposing summary judgment, the district court should not have placed a gloss on the remarks in favor of Takeda.

When the employer's actual decisionmaker, after terminating an employee for misconduct (or the appearance of misconduct), says without qualification that the employee is exceptional, did nothing wrong, did everything right, and should not have been fired, that contradiction—when combined with a prima facie case—is enough to create a jury question on the ultimate issue of discrimination. *See, e.g., Johnson v. Weld Cnty.,* 594 F.3d 1202, 1211 (10th Cir. 2010) (noting that pretext may be shown by "evidence that the employer didn't really believe its proffered reasons" for the challenged action). Ms. Kragor has "cast sufficient doubt on [Takeda's] proffered

11

nondiscriminatory reasons to permit a reasonable factfinder to conclude that [its] proffered 'legitimate reasons were not what actually motivated its conduct.'" *Combs*, 106 F.3d at 1538 (quoting *Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994)).[2]

Of course, "if the jury concludes that [Takeda's] proffered explanation[ ] [is] unworthy of belief, it may still remain unpersuaded that discrimination was the real reason for the [termination]. That decision is entrusted to the jury's discretion, but to exercise that discretion, the jury has to get the case." *Combs*, 106 F.3d at 1538. *See Gross v. FBI Fin. Servs., Inc.,* 557 U.S. 167, 178 (2009) (ADEA plaintiff must show, through direct or circumstantial evidence, "that age was the 'but-for' cause of the challenged employer decision").

## III

Mr. Orlando's denial of Takeda's proffered reason for Ms. Kragor's termination —which we accept as true for purposes of summary judgment—creates a jury question

---

[2] We do not know, of course, whether Mr. Orlando actually made the statements attributed to him by Dr. Bode. As noted earlier, the parties did not depose Mr. Orlando or Dr. Bode. Maybe at trial Mr. Orlando will deny that he said anything favorable about Ms. Kragor to Dr. Bode, and if so a jury will have to assess the credibility of Mr. Orlando and Dr. Bode. Or maybe Mr. Orlando will admit to making the statements attributed to him, but will explain that they were only his personal beliefs or were made so as to not implicate Dr. Bode (a significant Takeda client) in any ethical misconduct, and therefore did not undermine the personnel decision he made on behalf of Takeda. If he does so, however, a jury will have to determine whether that explanation is worthy of belief.

as to discrimination when combined with Ms. Kragor's prima facie case. We therefore reverse the district court's grant of summary judgment in favor of Takeda and remand for a trial on Ms. Kragor's claim that her termination was the result of age discrimination in violation of the ADEA.

**REVERSED AND REMANDED.**