[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-13665
Non-Argument Calendar
_____

D.C. Docket No. 2:11-cv-00059-MHT-TFM


CAROLYN RAWLS,

Plaintiff-Appellant,

versus


STATE OF ALABAMA
DEPARTMENT OF HUMAN RESOURCES,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(February 11, 2013)

Before CARNES, BARKETT and HULL, Circuit Judges.

Carolyn Rawls appeals the district court's order granting summary judgment in favor of her former employer, the Alabama Department of Human Resources ("DHR"), in her action alleging that DHR disciplined her because she is black, in violation of Title VII, 42 U.S.C. § 2000e-2, and 42 U.S.C. § 1981. The district court concluded that Rawls had failed to present evidence that DHR's proffered nondiscriminatory reasons for reprimanding and transferring Rawls to another department were pretextual.[1] After review, we affirm.[2]

## I.    BACKGROUND FACTS

Plaintiff Rawls was the Director of the Office of Criminal History Checks ("OCHC"), a department within DHR. OCHC performed background checks for DHR. OCHC outsourced some background checks to the Department of Public Safety ("DPS"), a separate state agency, which then submitted invoices to OCHC. Over several years, a dispute developed between OCHC and DPS over a backlog of DPS invoices that OCHC had not paid or only partially paid.

---

[1]The district court also granted summary judgment on Rawls's claim of constructive discharge, a ruling Rawls does not challenge on appeal

[2]We review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the party opposing the motion. Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1274 (11th Cir. 2008). Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Id.; Fed. R. Civ. P. 56(a).

2

DPS made various claims for payment against DHR.  In October 2008, the dispute was submitted to the Alabama Board of Adjustment ("BOA") for resolution.  The BOA hears claims for monetary damages against the state of Alabama (including its agency DHR).  The DHR attorney responsible for handling the DPS claims before the BOA was Elizabeth Hendrix.

On November 4, 2008, DHR's Hendrix sent Rawls a request to review a DPS claim before the BOA for unpaid DPS invoices between October 2007 and June 2008 totaling $217,055.  On November 25, 2008, Rawls's supervisor James Long forwarded to Hendrix a chart prepared by Rawls.  On January 7, 2009, Hendrix sent Rawls a request to review a second DPS claim before the BOA for unpaid DPS invoices between July and September 2008 totaling $78,201.50.  After receiving no response, DHR's Hendrix sent a follow-up email on January 16, 2009, asking Rawls to review the claim as soon as possible.  On January 30, 2009, Rawls sent Hendrix the same chart her supervisor Long had sent Hendrix in November.  According to Hendrix, Rawls's chart did not completely reflect the amounts billed, the payments DPS sought or the amounts DHR still owed and the chart was not immediately helpful to Hendrix in preparing a response to the DPS claims before the BOA.[3]

---

[3]DHR's Hendrix provided a similar chart attached to the Joint Consent Judgment ultimately filed with the BOA.  Hendrix's chart showed some different amounts than those in Rawls's chart.  As a result of these differences, Rawls's chart had an outstanding balance of

Although Hendrix was handling the DHR/DPS dispute before the BOA, on February 2, 2009, unbeknownst to Hendrix, Rawls communicated directly via several emails with Patricia Evans, a DPS employee, about unpaid invoices that were the subject of DPS's claims before the BOA. During their various exchanges, Rawls stated that she worked in the "Legal Division" and that DPS would "be eligible for an additional $8,330.00 payment" after the BOA hearing.

On the same day, DHR's Hendrix and Rawls received an email from a DHR employee, Paul Lista. Lista advised that he had received a call from Judy Earnest at the BOA expressing concern that DHR was circumventing the BOA's claims process and asked Lista to get from Rawls a list of the amount already paid toward the claims and the amount DHR expected to pay DPS.

On February 4, 2009, DPS employee Evans and her supervisor at DPS, Sgt. Thornton, called DHR's Hendrix about Rawls's communication with Evans. DHR's Hendrix informed Sgt. Thornton and Evans that she was unaware of Rawls's communication, was still trying to determine how much DPS was owed and that DHR had not yet submitted an answer to the DPS claims before the BOA. Hendrix advised them that she did not think DHR was allowed to make partial payments outside of the BOA claim process. Sgt. Thornton expressed frustration about the delay in receiving payments for work DPS had already performed. Sgt.

---

$165,508.25, while Hendrix's chart had an outstanding balance of $177,688.75. In other words, Rawls's chart understated the amounts owed to DPS.

Thornton also expressed concern about "the inability to reign [sic] Carolyn [Rawls] in about the recurring delay in payments" and questioned who was running DHR.

DHR's Hendrix then emailed Rawls's supervisor Long about these developments. Long forwarded Hendrix's email to Rawls and told her "[w]e may need to stop communication [sic] so much info to ABI about how the cla[i]ms will be resolved. They are feeding incorrect info to BOA and causing much concern. Refer any claim resolution questions to me or Elizabeth Hendrix."

On February 11, 2009, DHR's Chief Legal Counsel Sharon Ficquette officially reprimanded Rawls for her actions in connection with DPS's claims before the BOA. Long, who is also black, was also reprimanded. Rawls was removed as Director of OCHC and transferred to the Office of Quality Control. In addition, DHR Commissioner Nancy Buckner moved OCHC to the Center for Public Integrity and, at the suggestion of the Acting Director of that agency, named Tommy Crabtree, who is white, the Acting Director of OCHC.

## II.    DISCUSSION

### A.    General Principles

Both Title VII and § 1981 prohibit employment discrimination because of an employee's race. 42 U.S.C. § 2000e-2(a); Id. § 1981(a). When, as here, the plaintiff's employment discrimination case is based on circumstantial evidence, courts apply the McDonnell Douglas burden-shifting framework. Rioux v. City of

5

Atlanta, Ga., 520 F.3d 1269, 1274-75 (11th Cir. 2008). Under this framework, if a plaintiff establishes a prima facie case of discrimination, and the defendant articulates a legitimate, nondiscriminatory reason for the employment action, the plaintiff must show that the defendant's proffered reason was pretext for discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25 (1973); Rioux, 520 F.3d at 1274-75.

To show pretext, the plaintiff must come forward with evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Wascura v. City of South Miami, 257 F.3d 1238, 1243 (11th Cir. 2001) (quotation marks omitted). A reason cannot be "a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S. Ct. 2742, 2752 (1993) (quotation marks omitted). If the employer's proffered reason is one that might motivate a reasonable employer, a plaintiff cannot merely recast the reason, but must "meet that reason head on and rebut it." Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).

"When a plaintiff chooses to attack the veracity of the employer's proffered reason, the inquiry is limited to whether the employer gave an honest explanation of its behavior." Kragor v. Takeda Pharms. Am., Inc., ___ F.3d ___, No. 11-

6

16052, 2012 WL 6618360, at *5 (11th Cir. Dec. 20, 2012) (quotation marks omitted); see also Rioux, 520 F.3d at 1278 ("[P]retext centers upon the employer's beliefs, and not the employee's own perceptions of [her] performance." (quotation marks omitted)).  Thus, a plaintiff cannot show pretext merely by showing that an employer's good faith belief that the plaintiff engaged in misconduct is mistaken. EEOC v. Total Sys. Servs., Inc., 221 F.3d 1171, 1176-77 (11th Cir. 2000).

In the disciplinary context, the plaintiff may show pretext by identifying a similarly situated employee who was not disciplined after engaging in similar conduct as the plaintiff.  Rioux, 520 F.3d at 1276-77.  A comparator must be "similarly situated to the plaintiff in all relevant respects," and the "misconduct must be nearly identical" to that of the plaintiff.  Id.

**B.    Rawls's Claim**

We assume, as the district court did, that Rawls established a prima facie case of race discrimination.  Thus, we focus on whether Rawls presented evidence that DHR's reasons for reprimanding and transferring her were pretextual.

DHR presented evidence that Rawls was reprimanded and transferred for three reasons.  First, Rawls did not respond promptly or adequately to DHR's Hendrix's requests to review the two DPS claims before the BOA so that Hendrix could formulate a legal response.  Rawls took weeks to respond to Hendrix's

7

requests, and Hendrix found the information Rawls provided incomplete and unhelpful.

Second, Rawls sent unauthorized emails to Evans, a DPS employee, about one of the DPS claims pending before the BOA. In her emails, Rawls said she worked in the Legal Division, which was not true, and also advised Evans that DPS would be eligible for an $8,330.00 payment after the BOA hearing. DHR's Hendrix, the attorney representing DHR before the BOA, was unaware of and did not authorize Rawls to send these emails, which Hendrix viewed as a binding promise to pay. Rawls's unauthorized emails to DPS's Evans exacerbated tensions between DHR and DPS and led a BOA employee to express concern that DHR was trying to circumvent the BOA's claim process.

Finally, Rawls failed to devise and implement a system for the timely payment and processing of DPS invoices. Both DPS and OCHC had tried for several years to develop software programs to track DPS invoices and OCHC's payments. However, by the time of Rawls's reprimand, OCHC did not have such a system in place. Several DHR or OCHC employees testified that while Rawls was the Director of OCHC, the office was disorganized, had problems paying DPS invoices in a timely manner, and received complaints about backlogs.

DHR chief counsel Ficquette's reprimand stated that Rawls's actions violated several Rules of the State Personnel Board, including Rule (1)(a) 5, for

8

failing to perform her job properly, Rule (1)(b) 6, for making a false statement, and Rule (1)(b) 10, for serious violation of any other department rule.  The reprimand then listed six specific ways Rawls had violated work rules, including (1) failing "to put in place processes to allow for quick processing, tracking and monitoring of requests for clearances"; (2) failing "to put in place adequate processes to ensure obtainable identifiable results in a timely manner"; (3) failing "to correct broken processes that [she] knew and [had] known about since as early as 2006"; (4) making "a false statement to the BOA without authority to do so";[4] (5) violating "Department policy by keeping money orders in the OCHC overnight and for as long as several months"; and (6) compromising "the Department's relationships with other agencies."

We conclude that Rawls's evidence did not create a genuine issue of material fact as to the credibility of these reasons.  See Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1265 (11th Cir. 2010) (stating that to prove pretext, the plaintiff must show that there were "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the . . . proffered legitimate reasons . . . that a reasonable factfinder could find them unworthy of credence." (quotation marks omitted)).  Rawls does not dispute the timing and substance of

---

[4]Although this list states that the false statement was made to the BOA, this appears to be a typographical error as other portions of the reprimand make clear that the false statement was made to DPS employee Evans.

9

any of the email communications with Hendrix, Lista, Long or DPS employee Evans.  Nor does Rawls dispute that there were longstanding problems at OCHC with unpaid DPS invoices and with developing a new system to track and reconcile DPS billing.  While Rawls presented evidence that she and Long were in the process of implementing a new system for billing reconciliation, Rawls does not dispute that this new system was not yet up and running when she and Long were reprimanded.

Rawls submitted evidence that she and Long believed their reprimands were discriminatory and orchestrated by DHR's Ficquette to give Rawls's job to Crabtree.  However, conclusory allegations, without more, do not raise an inference of pretext.  Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1376 (11th Cir. 1996).  Rawls also submitted evidence that she and Long believed that Rawls's responses to Hendrix's requests were adequate and that the delays in reconciling unpaid DPS invoices were DPS's fault.

However, Rawls's own beliefs about her performance do not establish pretext.  See Alvarez, 610 F.3d at 1266 (explaining that the pretext inquiry centers on the employer's beliefs, rather than the employee's beliefs).  Moreover, when an employer's proffered reason for the employment action is poor performance; the question is not whether the plaintiff's performance was actually poor, but whether the employer believed the plaintiff's performance was poor, "even if mistakenly or

10

unfairly so, or instead merely used those complaints about [the plaintiff] as cover for discriminating against her because of her [protected characteristic]." Id. Rawls did not present any evidence that DHR's Ficquette or DHR Commissioner Buckner did not honestly believe that Rawls had performed poorly.

In any event, Rawls cannot survive summary judgment unless her evidence rebuts all of DHR's proffered reasons. See Chapman, 229 F.3d at 1037. Perhaps the pivotal reason Rawls was reprimanded and transferred (it certainly appears to have been the straw that broke the camel's back) was that she communicated directly with Evans, a DPS employee, about the disputed claims pending before the BOA and, without authorization, stated (falsely) that she worked in the legal office and that DPS was entitled to additional payment. Rawls does not dispute the substance of her email communications with Evans or the consequences, including that a BOA official was concerned that DHR was circumventing the claim process and that DPS officials became angry and questioned DHR's leadership.

Rawls's comparator evidence also does not show pretext. For all but one of Rawls's comparators, Rawls claimed only that the comparators generally mismanaged their offices, which does not establish that they engaged in "nearly identical" misconduct. See Rioux, 520 F.3d at 1280-81. The remaining comparator, Cheryl Martin, was the Director of the Center for Information Services, the office Rawls testified was tasked with creating software to reconcile

11

DPS invoices.  As such, Rawls claimed that Martin was equally responsible for the failure to address the backlog of unpaid DPS invoices, yet Martin was not reprimanded.  However, Rawls was not reprimanded simply for failing to implement a reconciliation system, but also for failing to timely and completely respond to Hendrix's requests to review the DPS claims before the BOA and, more importantly, for communicating, without authorization, with DPS employee Evans about those claims.  Rawls did not present any evidence that Martin or any of the other comparators engaged in this kind of misconduct.

For all these reasons, we cannot say that the district court erred in concluding that Rawls failed to present evidence that DHR's reasons for reprimanding and transferring her were pretext for racial discrimination.[5] Accordingly, we affirm the district court's order granting summary judgment to DHR on Rawls's Title VII and § 1981 claims.

**AFFIRMED.**

---

[5]The district court did not abuse its discretion in denying Rawls's motion to alter or amend the judgment, which merely attempted to reargue matters already decided by the district court, raised arguments that could have been, but were not, raised in response to the summary judgment motion and sought to introduce new evidence that could have been discovered prior to summary judgment.  See Michael Linet, Inc. v. Vill. of Wellington, Fla., 408 F.3d 757, 763 (11th Cir. 2005); Mays v. U.S. Postal Serv., 122 F.3d 43, 46 (11th Cir. 1997).