[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14339
Non-Argument Calendar
_____

D.C. Docket No. 5:18-cv-00307-AKK


GREGORY J. VAUGHN,

Plaintiff-Appellant,

versus

FEDEX FREIGHT, INC.,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(August 19, 2020)

Before WILLIAM PRYOR, Chief Judge, LUCK and LAGOA, Circuit Judges.

PER CURIAM:

Gregory Vaughn sued his employer, FedEx Freight, Inc., for discrimination under the Americans with Disabilities Act. The district court granted summary judgment in favor of FedEx. We affirm.

## FACTUAL BACKGROUND[1]

Vaughn has been a truck driver since the late 1980s. In 1992, Vaughn started driving for American Freightways, which later became part of FedEx. When FedEx took over, Vaughn was stationed in Decatur, Alabama.

On the night of September 26, 2012, Vaughn left for his regular route to Atlanta, Georgia. He began having "thoughts of craziness" as he was driving. On the way back to Decatur the following morning, Vaughn experienced hallucinations and paranoia. Vaughn called a friend and said he was going to die that day.

Vaughn eventually made it home and spoke with his wife. He told her he was going to die that day, too. Vaughn then went to his bedroom, grabbed a handgun, and waved goodbye to his wife. At some point, police tried to talk Vaughn into calming down, but Vaughn ignored their instructions. Vaughn put his handgun in his mouth and pulled the trigger, shooting himself in the roof of his mouth. Although Vaughn's recollection of the incident is hazy, he does not dispute he attempted suicide.

---

[1] We give the facts in the light most favorable to Vaughn. See Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997) ("We review a grant of summary judgment de novo, viewing all the facts and reasonable inferences in the light most favorable to the nonmoving party.").

Word of Vaughn's suicide attempt soon made it to Mark Courter, FedEx's national manager for safety compliance. Courter was responsible for ensuring compliance with guidelines and regulations set forth by the Federal Motor Carrier Safety Administration. Courter determined that the guidelines in the Administration's medical examiner handbook required a one-year waiting period from the date of a suicide attempt before a person could be medically certified to drive a truck. As such, Courter disqualified Vaughn from driving a truck for one year.

Vaughn recovered in the hospital for about a week. Vaughn believed he was psychologically impaired for only thirty-six hours and suffered no long-term disability. On October 17, 2012, Vaughn's psychiatrist—Dr. Venkata Devabhaktuni—determined that Vaughn suffered only a "brief psychotic disorder" and had no medical restrictions from returning to work.

While he was in the hospital, Vaughn applied for short-term disability leave with Cigna, FedEx's disability insurer. On October 26, 2012, FedEx sent Vaughn a letter regarding disability leave. The letter said "[if] an employee is inactive on [short-term disability leave] for six (6) months, the employee may apply for [long-term disability leave] for continuation of disability benefits for one (1) year." The letter also said FedEx "does not extend job protection beyond six (6) months of [short-term disability leave] or after available [Family and Medical Leave Act] time

3

has been exhausted unless additional time is available under other leave of absence alternatives or applicable laws."

Vaughn understood he was on short-term disability leave after he left the hospital. About five weeks later, however, Cigna denied Vaughn's request for short-term disability leave. Vaughn called his supervisor, Darrell Poole, to seek clarification, and Poole explained that "safety" said he could not go back to work for at least a year. Vaughn then appealed Cigna's denial. On January 10, 2013, Cigna denied Vaughn's appeal and explained that he was not entitled to short-term disability leave based on an exclusion for "attempted suicide" and self-inflicted injuries. The denial of leave was effective October 14, 2012.

On May 7, 2013, FedEx determined that either Vaughn would need to "return to a non-driving position . . . if there [was] one available" or FedEx would have to "proceed with separation." There was no non-driving position available, so Poole asked Vaughn if he wanted to retire, but Vaughn declined. Kim Cannon, a human resources advisor, called Vaughn, and Vaughn said he should have had to wait only six months to resume work as a truck driver because he suffered a brief psychotic episode and was not depressed. Cannon told Vaughn he had been on unapproved leave and would need to request a reasonable accommodation review to continue working for FedEx.

4

In June 2013, Cannon and Poole spoke with Vaughn to help him begin the review process. Vaughn signed a form stating he did not have any medical restrictions but that he was "unable to get a valid DOT medical card" until the twelve-month waiting period ended on September 27, 2013. The form also said Vaughn would be willing to work as a dock worker in the interim as long as it did not "affect his seniority and full time status."

On July 9, 2013, FedEx sent Vaughn a letter offering him two options in response to his request for reasonable accommodation review: (1) a general leave of absence through September 27, 2013; or (2) temporary reassignment to a part-time dock position until September 27, 2013. In either case, Vaughn's "company seniority" would be protected but his "job class seniority" would be reset to the date he was recertified as a truck driver. Job class seniority at FedEx determined whether truck drivers could bid on favorable routes, which substantially affected how much drivers were paid. Vaughn was not happy with either option because he wanted to keep his job class seniority.

Vaughn then reached out to Dale Davis, FedEx's regional vice president of operations for the southeast region. Vaughn told Davis that FedEx applied the wrong guideline and should have allowed him to resume work after six months based on the guideline for brief psychotic disorders. Davis contacted FedEx's legal, human resources, and safety departments to discuss whether FedEx applied the right

5

guideline.  Based on that discussion, FedEx chose to "let a physician decide" if Vaughn could be certified to drive a truck sooner than twelve months.  FedEx then scheduled an appointment for Vaughn to meet with Dr. Eric Roth.

Before Vaughn's appointment, Courter's assistant sent Dr. Roth an email with Administration materials and a newspaper article about Vaughn's suicide attempt. Courter also sent Dr. Roth the guideline for major depression from the Administration's medical examiner handbook.  It was common practice for FedEx to send a physician relevant information before an employee's certification examination.

Dr. Roth did not examine Vaughn on the date of the appointment; instead, he read something to Vaughn about major depression, said Vaughn would have to wait a year from his suicide attempt to be medically certified, and walked out of the room. Vaughn spoke with Dr. Roth for less than thirty seconds.

Upset that Dr. Roth did not examine him, Vaughn had an examination with his personal doctor, Dr. Thomas Lockard, who certified Vaughn was "physically able" to drive a commercial vehicle.  Vaughn also got a letter from Dr. Devabhaktuni stating that Vaughn's "mood disorder" had improved and Vaughn was "stable and doing very well" and "should return to his work as a professional truck driver immediately."  Vaughn sent Dr. Lockard's medical report and Dr. Devabhaktuni's letter to FedEx.

6

On July 26, 2013, FedEx sent Vaughn a follow-up letter regarding his request for reasonable accommodation review.  FedEx said it understood "a FedEx Freight approved DOT medical examiner"—Dr. Roth—told Vaughn "that recertification was not possible until at least 12 months had passed since [his suicide attempt]." FedEx further noted that Dr. Roth's determination was based on an Administration "regulatory guidance," which it quoted in the letter.  FedEx offered Vaughn the same two options provided in its earlier letter and told Vaughn to respond no later than August 2, 2013.  On August 1, 2013, Vaughn sent FedEx a letter picking the first option—a general leave of absence until September 27, 2013—"under GREAT protest and in duress due to [FedEx']s discrimination against [his] illness."

Vaughn went back to work as a truck driver on September 30, 2013, after being medically recertified.  Vaughn's job class seniority was reset to the lowest level, the same as a new hire.  Vaughn otherwise would have been the second-most-senior truck driver.

Before returning to work, Vaughn filed an EEOC charge of discrimination, claiming he was discriminated against because of his disability and the perception that he was disabled.  Vaughn specifically complained about having to wait twelve months to go back to work and losing his job class seniority.  On December 6, 2017, the EEOC issued Vaughn a right-to-sue letter.

7

## PROCEDURAL HISTORY

On February 23, 2018, Vaughn sued FedEx in the Northern District of Alabama, raising one count of discrimination and retaliation under the Americans with Disabilities Act. Vaughn alleged he suffered a "psychotic episode resulting in a suicide attempt" and that there is no rule that required him to wait a year after his suicide attempt to work as a truck driver. He claimed FedEx discriminated against him on the basis of a disability or perceived disability by not allowing him to go back to work "even though his personal physician had cleared him to return to work and fully perform his job without accommodation or restrictions." He also claimed FedEx discriminated against him by resetting his job class seniority.

On July 22, 2019, FedEx moved for summary judgment. FedEx argued that Vaughn failed to establish a prima facie case of discrimination or retaliation under the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), burden-shifting test. FedEx argued that Vaughn failed to establish a prima facie case of discrimination because he was neither disabled nor perceived as being disabled and, until the twelve-month waiting period was over, he was not a "qualified individual" able to work as a truck driver. FedEx also argued that there was no triable issue of pretext because its twelve-month disqualification was a legitimate effort to comply with applicable guidelines and its decision to reset Vaughn's job class seniority was consistent with FedEx's internal policies.

On October 10, 2019, the district court granted FedEx's motion for summary judgment.    Even assuming Vaughn could establish a prima facie case of discrimination under McDonnell Douglas, the court concluded FedEx was entitled to summary judgment because it was undisputed that FedEx's nondiscriminatory reasons for disqualifying Vaughn and resetting his job class seniority were not pretextual.   Specifically, the court concluded that FedEx reasonably relied on the applicable guideline to disqualify Vaughn from working as a truck driver for twelve months and that FedEx's decision to reset Vaughn's job class seniority was consistent with its internal policies.  The district court also concluded that Vaughn failed to state a prima facie case of retaliation because FedEx decided to disqualify Vaughn and reset his job class seniority before he filed a charge of discrimination.[2]

## STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo.  Sconiers v. Lockhart, 946 F.3d 1256, 1262 (11th Cir. 2020).   Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute as to any material fact and compels judgment as a matter of law.  Id.; Fed. R. Civ. P. 56(a).

[2] Vaughn has not appealed this part of the district court's order, and we therefore affirm without further comment on the retaliation claim. See Monaghan v. Worldpay US, Inc., 955 F.3d 855, 859 n.4 (11th Cir. 2020) ("Ms. Monaghan does not appeal the grant of summary judgment on her discrimination claims and discusses her termination in the context of her retaliation claim. Because all her arguments are focused on the retaliation claim, that is the only claim we address.").

## DISCUSSION

At the pretext stage of the <u>McDonell Douglas</u> burden-shifting test, an employer "must articulate a legitimate, nondiscriminatory reason for the challenged employment action." <u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc). "However, the employer's burden is merely one of production; it 'need not persuade the court that it was actually motivated by the proffered reasons.'" <u>Id.</u> (citation omitted). "If the defendant articulates one or more such reasons," the plaintiff must "come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." <u>Id.</u> (citation omitted). "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." <u>Id.</u> at 1024–25 (citation omitted).

### *The Twelve-Month Waiting Period*

FedEx said it disqualified Vaughn from working as a truck driver for twelve months because the applicable guidelines required a twelve-month waiting period before a truck driver could be medically recertified after a suicide attempt. Specifically, FedEx relied on guidelines in the Administration's medical examiner

handbook.  Vaughn argues that FedEx's non-discriminatory reason for disqualifying him is "weak, and arguably false," because his "actual medical condition, brief psychosis, did not require 12 months off."  In other words, Vaughn does not challenge FedEx's reliance on the handbook—he just argues FedEx applied the wrong guideline.

The Administration's medical examiner handbook includes a section on psychological disorders with recommended waiting periods for different disorders depending on the employee's symptoms.  See Handbook[3] at 185–201.  FedEx referred to the section on "Major Depression," which recommends a "[m]inimum" waiting period of one year "symptom free following . . . a suicide attempt."  Id. at 198.  Vaughn argues FedEx should have instead referred to the section on "Schizophrenia and Related Psychotic Disorders" because it lists "[b]rief reactive psychosis" as a related condition, which is what Dr. Devabhaktuni diagnosed Vaughn with.  That section recommends a waiting period of six months for brief reactive psychosis.  Id. at 200.

Even if the "Major Depression" section was not applicable to Vaughn based on his diagnosis, that does not mean FedEx's reliance on that section was pretextual.  A plaintiff "can show pretext either directly by persuading the court that a

---

[3] Available at: https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/docs/mission/advisory-committees/mrb/83401/fmcsamedicalexaminerhandbook.pdf.

discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Kragor v. Takeda Pharm. Am., Inc., 702 F.3d 1304, 1308 (11th Cir. 2012) (citation and quotation marks omitted). "If a plaintiff produces sufficient evidence that the employer's proffered reason is merely pretextual, that evidence may sometimes be enough to preclude summary judgment in favor of the employer." Id. at 1309. "In evaluating a summary judgment motion, [t]he district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Jackson v. State of Ala. Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005) (citation and quotation marks omitted).

Here, Vaughn failed to show that FedEx's reliance on the "Major Depression" section was merely pretextual. That section notes that symptoms of major depression include "suicidal thoughts or attempts." Handbook at 197. It is undisputed that Vaughn attempted suicide and that FedEx knew of his suicide attempt when it disqualified him. When Vaughn argued FedEx should have applied a different section instead, FedEx arranged for Dr. Roth to meet with Vaughn and decide whether a different waiting period applied. Dr. Roth likewise concluded Vaughn was subject to a twelve-month waiting period. Although Vaughn argues

12

FedEx "interfered" with Dr. Roth's assessment and therefore cannot rely on it, it is undisputed that it was common practice for FedEx to send a doctor relevant information before an employee's certification exam. At best, Vaughn has showed only that FedEx's reliance on the "major depression" section was mistaken. But an employer's mistaken belief is insufficient to establish pretext. See Flowers v. Troup Cnty., Ga., Sch. Dist., 803 F.3d 1327, 1338 (11th Cir. 2015) ("Put frankly, employers are free to fire their employees for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." (citation and quotation marks omitted)); Alvarez v. Royal Atl. Devs., Inc., 610 F.3d 1253, 1266 (11th Cir. 2010) ("The inquiry into pretext centers on the employer's beliefs, . . . not on reality as it exists outside of the decision maker's head."); see also Pollard v. Rea Magnet Wire Co., 824 F.2d 557, 559 (7th Cir. 1987) (Easterbrook, J.) ("A reason honestly described but poorly founded is not a pretext, as that term is used in the law of discrimination.").

Finally, even if there were evidence that FedEx knew it applied the wrong section, all that might show is "pretext of something." See Flowers, 803 F.3d at 1337–38. Vaughn put forward no evidence that FedEx disqualified him because he was disabled or because FedEx perceived him as being disabled. Indeed, the undisputed evidence shows that Courter's disqualification of Vaughn was based exclusively on the Administration guidelines and the fact that Vaughn attempted

suicide.  Vaughn admits as much on appeal.  Absent any evidence of discrimination, FedEx was entitled to summary judgment.  See id. at 1339 ("Because, as discussed above, Flowers has failed to put forth any additional evidence that would support an inference of unlawful discrimination, it is insufficient for Flowers merely to make a prima facie case and—assuming that he could do so—call into question the School District's proffered legitimate, nondiscriminatory reason.  The burden placed on Title VII plaintiffs to produce additional evidence suggesting discrimination after contradicting their employer's stated reasons is not great, but neither is it nothing.").

*Vaughn's Job Class Seniority*

FedEx said it reset Vaughn's job class seniority based on its internal policy. Specifically, FedEx said "[b]ecause Vaughn had been deactivated as a commercial driver for over six months without a leave of absence that protects job class seniority, [FedEx] acted consistently with its policies in starting his job class seniority over." Vaughn argues that FedEx's reason for resetting his job class seniority is pretextual because that policy was unwritten and contrary to a different written policy.  Vaughn claims he was on approved general leave and his absence was therefore comparable to five other employees who were allowed to return to work with full job class seniority.

First, it is undisputed that FedEx employees would lose their job class seniority if they were absent on unprotected leave for longer than six months.

14

Vaughn knew that was FedEx's policy at the time. And the written policy Vaughn points to is consistent with that unwritten policy. In relevant part, it says: "Employees returning from a general leave of absence in accordance with an approved timeframe will be restored to the same or equivalent position with the same pay, benefits, seniority, and other terms and conditions of employment that they had prior to going on leave . . . ." Notably, the policy does not say employees on unapproved leaves of absence would have their job class seniority protected.

Second, it is undisputed that Vaughn was on unapproved leave for at least six months. Vaughn's request for short-term disability leave was denied effective October 14, 2012. Cannon spoke with Vaughn in "[l]ate April, early May of 2013"—after six months had passed—and told Vaughn he had been on "unapproved leave." Although Vaughn was later placed on general leave because of his request for reasonable accommodation review, it was made abundantly clear to Vaughn that he would not be keeping his job class seniority.

Vaughn seems to suggest he was on general leave before he requested a reasonable accommodation review. In support, he cites the deposition testimony of Cannon and Julie Frederick, another human resources representative. Neither of their testimonies support his claim. Frederick had nothing to do with Vaughn's leave, and the part of her testimony he cites pertained to other employees. Also, Frederick signed a sworn affidavit saying that, based on her review of FedEx's

15

records, Vaughn "had been on an unapproved leave the entire time he was absent from work." Although Cannon said Vaughn "was coded as general leave," it is clear from her testimony he was granted general leave in response to his request for reasonable accommodation review. As such, the district court did not err in concluding that "because FedEx made the decision to reset Vaughn's job class seniority at a time when Vaughn was not on an approved general leave of absence, its decision was not contrary to its written policy."

Vaughn's reference to purported comparators does not show that FedEx's non-discriminatory reason for resetting his job class seniority was pretextual. A plaintiff attempting to prove discrimination by way of comparators must show that he and his proffered comparators are "similarly situated in all material respects." Lewis v. City of Union City, 918 F.3d 1213, 1218 (11th Cir. 2019) (en banc); see also Johnson v. Miami-Dade Cty., 948 F.3d 1318, 1325–26 (11th Cir. 2020) (remanding for the district court to apply the "similarly situated in all material respects" standard to comparator evidence offered to establish pretext). Two of the five employees Vaughn points to were on long-term disability leave for approximately fourteen to sixteen months due to cancer. Two other employees were on leave for workers' compensation injuries. Finally, the fifth employee was disqualified from working as a truck driver because of a criminal charge but continued to work as a dock worker; he was allowed to keep his job class seniority

16

as a truck driver after his "conviction was stricken from his record." None of these employees are valid comparators because they are not similarly situated to Vaughn in all material respects. Accordingly, the district court did not err in concluding Vaughn failed to establish a triable issue of pretext.[4]

**AFFIRMED.**

---

[4] Because we agree with the district court that there was no triable issue of pretext, we do not address whether Vaughn failed to make a prima facie case of discrimination.

17