[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13868

Non-Argument Calendar

_____

RICARDO T. SANZ,

Plaintiff-Appellant,

*versus*

WELLS FARGO BANK, N.A.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cv-23122-MGC

_____

Before WILSON, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

Ricardo Sanz appeals the district court's grant of summary judgment to his former employer, Wells Fargo, on Sanz's claims of age discrimination and retaliation under the Florida Civil Rights Act, Fla. Stat. § 760.10. Sanz argues that the district court erred because (1) Sanz established a prima facie case of age discrimination and retaliation; (2) Sanz presented a mosaic of circumstantial evidence of discrimination and showed Wells Fargo's proffered reasons for firing him were pretext for discrimination and retaliation; and (3) the district court acknowledged the existence of triable issues of fact. After careful review, we affirm. Because we conclude there is no material issue of fact that Sanz did not establish pretext or a mosaic of circumstantial evidence, we need not address whether he made out a prima facie case of discrimination or retaliation under the FRCA.

## I.

Sanz was employed by Wells Fargo and its predecessor companies from 1987 until his termination in 2018. In 2009, when Sanz was 50 years old, he was promoted to the role of Regional Private Banking Manager ("RPBM") for Wells Fargo's Southeast Florida Region—one of six banking regions within the Southeast Region. Sanz, who was the oldest RPBM in the Southeast Region, held this position for nine years until his 2018 termination.

As RPBM, Sanz initially reported to Jason Williams, his direct supervisor, and Jayne Hill, his "dotted line" supervisor. In mid-2018, Jeff Haines became Sanz's new direct supervisor, a role he retained until Sanz's termination. Sanz's base salary as RPBM was approximately $205,000. He did not receive a pay raise during his nine years as an RPBM because, according to Wells Fargo, his salary was the maximum allowed for the position. According to Sanz, however, the maximum base salary for his position between 2014 and 2018 across all regions of the same "tier" as Sanz's was, in fact, between $210,000 and $253,500. But Sanz did not present any evidence that any of the RPBMs receiving a higher salary were younger than him.

Wells Fargo evaluates a banking employee's performance by reference to that employee's alignment with the company's team-based business model, the One Model on Model ("OMOM"). Whether an employee is properly executing the OMOM depends upon certain metrics, such as "revenue, sourced sales, client fulfillment, new client acquisition, client discovery review and planning and penetration, strategic partnership, and recruiting." Although the OMOM has existed in some form since 2009, Wells Fargo began to place greater emphasis on its enforcement in 2016.

Upon becoming Sanz's direct supervisor, Haines quickly grew concerned that Sanz was not properly following the OMOM, noting several occasions on which Sanz assembled teams of bankers with inadequate skills for clients' specific needs and criticizing Sanz's unwillingness to "accept change."

Haines and Hill held two meetings with Sanz in late 2016 and early 2017, during which they informed Sanz that his implementation of the OMOM was inadequate, without providing him any specifics as to why this was. In December, Haines sent an email to Hill titled "notes from my coach," opining on Sanz's job performance. The record does not disclose the author of this "coaching memo," and neither Haines nor his business coach recall drafting it. The coaching memo highlights several favorable aspects of Sanz's performance, including that he was "meeting or exceeding his most critical performance objectives." But it also states that there were other important "quantitative and qualitative measures" Sanz was not meeting, including his OMOM execution. The memo also refers to Sanz as "cancer or toxic to both leadership team and greater performance" and directs Haines to "manage him out or up" and begin searching for a potential replacement.

The evidence shows that, although Sanz's market had high rankings and percentage numbers in many respects during his tenure as RPBM, his performance began to decline in other key areas beginning in 2014. For instance, Sanz's annual performance reviews indicated that his credit sales were "below plan" in both his 2015 and 2016. His reviews also identified concerns with leadership, team performance, revenue, sourced sales, recruiting, communication, and OMOM execution.

In June 2017, Wells Fargo provided Sanz an Informal Performance Improvement Plan ("PIP") reiterating these performance deficiencies and warning Sanz that Wells Fargo could terminate his

employment if Sanz's conduct did not improve by September. The Informal PIP established performance expectations of 100 percent, even though no other banking leaders in the Southeast Florida Region met this goal, and none received a PIP.

Sanz responded to the Informal PIP by filing an internal complaint of age discrimination and age-based retaliation. When Karen Lucherk, the Human Resources representative assigned to Sanz's complaint, asked Sanz for additional information supporting his claim, Sanz responded that he had heard "comments from senior leaders in managers meetings regarding historians [who] do not accept change." Lucherk found this evidence insufficient to initiate an investigation, in part because Wells Fargo employed actual historians, who could be the subjects of those comments.

After Lucherk closed Sanz's complaint, Haines and Hill issued Sanz a Formal PIP on October 31, 2017. The Formal PIP explained that Sanz's performance continued to fall below expectations in several key areas. On February 5, 2018, after the time to comply with the Formal PIP had lapsed, Wells Fargo fired Sanz. He was 59 years old at the time. Wells Fargo replaced Sanz with Greg Rolle, who was then 51 years old. Hill and Haines never issued Rolle a PIP, even though his 2018 performance review identified credit sales of 49 percent, which fell far below Sanz's 86 percent in 2016. But Rolle was ranked first in the nation the following year, and his credit sales were over goal by 2020.

Sanz sued Wells Fargo in Florida state court, claiming his termination    constituted    unlawful    age    discrimination    and

retaliation in violation of the FCRA. Wells Fargo removed the matter to federal court, and the district court entered summary judgment in Wells Fargo's favor. The court held that Sanz failed to establish a prima facie case of age discrimination or retaliation and that, even if he had, he failed to show that Wells Fargo's proffered reason for discharging him—underperformance—was pretext for discrimination or retaliation.

## II.

We review an appeal from summary judgment *de novo*. *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1310 (11th Cir. 2013). Summary judgment is proper if, viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)).

The FRCA prohibits employers from firing employees who are forty years or older because of their age. *See* Fla. Stat. §§ 760.10(1)(a), (7). Age discrimination and retaliation claims under the FRCA are governed by the same legal framework as those under the federal Age Discrimination in Employment Act, 29 U.S.C. § 623(a). *Zaben v. Air Prods. & Chems., Inc.*, 129 F.3d 1453, 1455 n.2 (11th Cir. 1997).

Where, as here, a plaintiff claims discrimination or retaliation based on circumstantial evidence, we usually apply the burden-shifting framework established in *McDonnell-Douglas Corp.*

*v. Green*, 411 U.S. 792 (1973). *See Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015). Under that framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination or retaliation. *See id.* (citing *Kragor v. Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012)). If the plaintiff satisfies this burden, the burden of production then shifts to his employer to articulate a legitimate, non-discriminatory reason for its actions. *Id.* If the employer proffers even one such reason, the burden then shifts back to the plaintiff, who then must show that the employer's reason is a pretext. *Id.* To establish pretext and avoid summary judgment, the plaintiff "must present 'significant probative' evidence," *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (citing *Isenbergh v. Knight–Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 443–44 (11th Cir.1996)), "sufficient to permit a reasonable fact finder to conclude that the discriminatory animus was the 'but-for' cause of the adverse employment action," *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013) (citing *Gross v. FBL Fin Servs., Inc.*, 557 U.S. 167, 176 (2009)). An employer's proffered reason is not pretextual unless the plaintiff shows "*both* that the reason was false, *and* that discrimination was the real reason." *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (quoting *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006)). We have made clear that "employers are free to fire their employees for 'a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.'" *Flowers v. Troup Cnty. Sch. Dist.*, 803 F.3d 1327,

1338 (11th Cir. 2015) (quoting *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir.1984)).

Even if a plaintiff fails to satisfy his burden under the *McDonnell-Douglas* framework, he may still defeat summary judgment by presenting "a convincing mosaic" of circumstantial evidence that "raises a reasonable inference that the employer discriminated" against him. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). "A 'convincing mosaic' may be shown by evidence that demonstrates, among other things, (1) 'suspicious timing, ambiguous statements . . ., and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City*, 934 F.3d 1169 (11th Cir. 2019) (quotations omitted).

Sanz never argued before the district court that he presented "a convincing mosaic" of circumstantial evidence under our *Smith* test. And although the district court purported to apply only the *McDonnell-Douglas* framework to Sanz's claims, the court concluded its discussion of Sanz's discrimination claim by stating that "Sanz has provided neither direct evidence of discrimination *nor 'a convincing mosaic of circumstantial evidence that warrants an inference of intentional discrimination.'"*

On appeal, Sanz relies upon the same pieces of evidence to support both that he established pretext under *McDonnell-Douglas* and a convincing mosaic under *Smith*. Specifically, Sanz points to

statements from the "coaching memo" that "Sanz exceeded all critical performance metrics" but Haines should nevertheless look for a replacement; Haines's comment regarding Sanz's resistance to change; references by senior employees to "historians" in the company; Wells Fargo's "objective performance metrics" showing the adequacy of Sanz's performance; the 100 percent PIP requirement "that only he was required to meet"; and Wells Fargo's "demonstrably false" explanation for not giving Sanz a raise for nine years. This incomplete description of the evidence fails to create a convincing mosaic of evidence or to show pretext.

First, in describing his job performance, Sanz fails to mention his deficient credit sales and recruiting beginning as far back as 2014. His description of the "coaching memo" similarly omits the statement that Sanz was underperforming on several key "qualitative and quantitative measures" and the reference to him as "cancer or toxic to both leadership team and greater performance." This undisputed evidence of Sanz's underperformance over a span of years rebuts any suggestion that Wells Fargo's proffered reason for firing him, underperformance, was false. *See Springer*, 509 F.3d at 1349 (quoting *Brooks*, 446 F.3d at 1163).

Nor does the evidence on which Sanz relies exhibit discriminatory animus. For instance, Sanz does not suggest the comments from senior leaders regarding "historians" who "do not accept change" pertained to older employees generally or him specifically, or that Haines or Hill made these comments or knew of them. And it would be unreasonable to infer that Haines's criticism of Sanz's

resistance to change was age-related, particularly in light of the company's newfound emphasis on the OMOM—something that demanded change from *all* banking employees. All the precedents Sanz cites to support his argument that these comments constituted circumstantial evidence of discrimination involved explicit references to age, sex, or race—evidence wholly absent here. *See Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1203 (11th Cir. 2010) (comment that plaintiff "is too old to be working here"); *Rojas v. Florida*, 285 F.3d 1339, 1342–43 (11th Cir. 2002) (comment that an employee "did not deserve her job" because she "was a woman"); *Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 962 (11th Cir. 1997) (comments referring to plaintiff as "very large, very strong, very muscular black man" who intimidated white employees with his "strut").

Similarly, the fact that Sanz did not receive a pay raise for nine years does not suggest discriminatory motive absent evidence that, for example, Wells Fargo provided raises or higher salaries to younger RPBMs during this period. And to the extent Wells Fargo held Sanz to higher expectations than other RPBMs in the Southeast Region, none of them also reported to Haines, and all of them were over forty and thus within the class of persons protected by the FRCA. Finally, Sanz, in comparing his performance to that of Rolle, his younger replacement, relied only on his 2018 performance statistics. But Rolle did not replace Sanz until the middle of that year, and his numbers for the following years surpassed Sanz's previous figures.

Upon examination, Sanz's arguments amount to mere "[c]onclusory allegations of discrimination," which, "without more," cannot save his discrimination and retaliation claims from summary judgment. *Fulcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1313 (11th Cir. 2016).

## III.

Sanz also argues that summary judgment was improper because the district court acknowledged that issues of material fact existed regarding Sanz's retaliation claim. But these disputed factual issues pertained only "to whether Sanz has established one of the elements of his [prima facie case of] retaliation." And the district court held that, *even if* Sanz established a prima facie case, his claim nevertheless fails because "Sanz has not shown that the proffered reasons for his discharge were pretextual." We agree.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here, factual disputes regarding Sanz's prima facie case will not affect the outcome of the suit, because even if such disputes exist, his claims still fail for want of pretext under *McDonnell Douglas* or a convincing mosaic of circumstantial evidence under *Smith*.

## IV.

For the foregoing reasons, the district court is **AFFIRMED.**